Argued and submitted March 31, 2011, affirmed May 9, 2012

Karen I. KIRSCH,
*Petitioner,*

*v.*

DEPARTMENT OF CONSUMER
AND BUSINESS SERVICES
and Regence BlueCross BlueShield of Oregon,
*Respondents.*

Department of Consumer and Business Services
0807007; A143335

278 P3d 104

Charlie Ringo argued the cause and filed the briefs for petitioner.

Judy C. Lucas, Senior Assistant Attorney General, argued the cause for respondent Department of Consumer and Business Services. With her on the brief were John R. Kroger, Attorney General, and David B. Thompson, Interim Solicitor General.

Robyn Ridler Aoyagi argued the cause for respondent BlueCross BlueShield of Oregon. With her on the brief were David F. White and Tonkon Torp LLP.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

HASELTON, C. J.

## HASELTON, C. J.

Petitioner seeks judicial review of a final order in which the director of the Department of Consumer and Business Services (the department) concluded, after a contested case hearing, that the department properly applied ORS 742.005[1] in approving an individual health insurance premium rate increase filed by Regence BlueCross BlueShield of Oregon (Regence) in 2008. On review, petitioner argues that we should reverse the order and rescind the rate increase on one or more of the following grounds: (1) the director's conclusions that the department properly applied ORS 742.005(3), (4), and (6) lack substantial reason; (2) the department, in quashing certain subpoenas, violated her rights under the Administrative Procedures Act, ORS chapter 183 (APA), and the Due Process Clause of the Fourteenth Amendment to the United States Constitution; and (3) the department was required to conduct formal rulemaking to amplify the meaning of certain terms in ORS 742.005. We reject the latter contention without discussion, and, as explained below, we also reject petitioner's arguments as to the first two matters. Accordingly, we affirm.

We summarize the facts and the procedural history of the case from the proposed order of the administrative law judge (ALJ), which was adopted and incorporated by reference in the director's final order. *See Coffey v. Board of Geologist Examiners*, 348 Or 494, 496 n 1, 235 P3d 678 (2010)

---

[1] As pertinent to this case, ORS 742.005 provides:

"The Director of the Department of Consumer and Business Services shall disapprove any form requiring the director's approval:

"* * * * *

"(3) If, in the director's judgment, its use would be prejudicial to the interests of the insurer's policyholders;

"(4) If the director finds it contains provisions which are unjust, unfair or inequitable;

"* * * * *

"(6) If, with respect to any of the following forms [which list includes individual health insurance policy forms, ORS 742.005(6)(a)], the director finds the benefits provided therein are not reasonable in relation to the premium charged[.]"

Although the legislature amended the process for approving health insurance rate filings, effective with respect to filings submitted on or after April 1, 2010, *see* Or Laws 2009, ch 595, §§ 27-31, the text of ORS 742.005 was not changed.

(where the factual findings of the board are not challenged, those findings are the facts for purposes of judicial review).[2]

In February 2008, Regence submitted an "Individual 2008 Third Quarter Rate Filing," seeking a 10.3 percent quarterly rate increase for its individual health benefit plans, effective July 1, 2008. The requested increase, when compounded with prior rate increases, amounted to an annual rate increase of approximately 26 percent over the prior year.[3]

Fitzpatrick, an actuary in the department's Insurance Division, was assigned responsibility for reviewing the rate filing. In a 2008 department publication, the department described the then-existing submission and review process:

"Rate filings must include actuarial documentation supporting the rates and are reviewed under statutory provisions that provide that rate filings will be disapproved if the filings are deemed 'prejudicial to the interests of the insured's [*sic*] policyholders,' if the filings contain 'provisions which are unjust, unfair, or inequitable,' or, most significantly, if the 'benefits . . . are not reasonable in relation to the premium charged.' ORS 742.005."

(Ellipses in original.) Factors considered by the department in determining whether a rate request is actuarially justified included the historical and projected loss ratio, trend, and administrative costs, as well as the company's "net income target."[4]

---

[2] The department asserts that petitioner is not challenging any of the director's factual findings, and, although petitioner disputes that assertion generally, she fails to identify any specific findings of fact in the order that, in her view, are not supported by substantial evidence. Rather, petitioner merely points to the written objections that she filed in the proceeding below, in which she stated, without specificity, that the ALJ's proposed order "makes erroneous findings of fact." That is insufficiently precise to identify and preserve a factual issue for judicial review.

[3] For the arithmetically interested reader, the requested 10.3 percent quarterly increase, when compounded with prior approved increases—5.0 percent, effective October 1, 2007; 3.6 percent, effective January 1, 2008; and 5.0 percent, effective April 1, 2008—results in a 25.9 percent annual increase from July 1, 2007, rates.

[4] The department's publication included definitions of several operative terms: "Loss ratio" was defined as "the relationship between the premiums received by an insurance company and the claims paid by that company." "Trend" referred to "the rate of increase in the claims portion of an insurance company's loss ratio." "Net income target" connoted "the projected profit or loss after subtracting claims costs and administrative costs from revenue plus investment income." (Italics omitted.)

Fitzpatrick initially determined that Regence could justify only a two percent quarterly (or, as compounded by prior increases, 16.5 percent annual) rate increase. He explained that "[t]he major difference in results obtained by the Division and [Regence] can be narrowed down to two sources: (1) target loss ratio,[5] and (2) accounting for quarterly rate increases rolled forward the past three quarters." Regence disagreed with the department's proposal to approve a two percent quarterly increase, rather than the requested 10.3 percent, and, in response, provided the department with additional information and updated financial projections to support its requested increase. Regence asserted that the requested increase was necessary to sustain its individual health insurance line—and, indeed, that, even with a 10.3 percent increase, the product line would operate at a loss in 2008.

After reviewing the updated information, Fitzpatrick decided that the target loss ratio reflected in Regence's rate filing was acceptable,[6] noting that it was above the minimum acceptable ratio of 55 percent set out in guidelines published by the National Association of Insurance Commissioners (NAIC guidelines). The department subsequently agreed to approve a four percent quarterly (18.7 percent annual) increase. Regence did not agree with that proposal, and, sometime in early April 2008, Regence's chief executive officer and other Regence executives met with representatives from the department, including the director, Cory Streisinger, the administrator of the insurance division, Scott Kipper, and the deputy administrator, Carl Lundberg, to discuss the rate increase. In that meeting, Regence emphasized the losses that it had sustained on its individual health insurance line since 2006 and that it would continue to experience, even with the rate increase. Regence explained why the requested increase was essential to the financial health of the individual line and reported that Regence had already reduced its request below what it believed was necessary.

---

[5] An insurer's "target loss ratio" is a projection of its incurred claims divided by its earned premiums. For example, as Regence explains, "a target loss ratio of 75% means that the insurer expects to spend 75% of what it receives in premiums to pay for claims, leaving 25% for administrative costs and profits."

[6] Regence's actual target loss ratio is confidential.

Following that meeting, the department agreed that, rather than predicating its review of the rate filing on consideration of Regence's *overall* financial position, it would focus, instead, on the financial position of the individual health insurance line *alone*.

On December 27, 2007—prior to the rate filing at issue here—the director delegated to Kipper, in his capacity as administrator of the Insurance Division, the authority to approve health insurance rate filings.[7] In accordance with that delegation, Kipper, by letter dated April 11, 2008, notified Regence that the department had approved its original request for a 10.3 percent quarterly increase, subject to certain reporting conditions.

Petitioner, a subscriber of an individual health insurance policy issued by Regence, challenged the department's action and requested a hearing pursuant to ORS 731.240.[8] She argued that the department should have disapproved the rate filing under ORS 742.005 because it was "excessive, inequitable, prejudicial to the interests of policyholders and unreasonable in relation to the benefits provided." The department referred the request to the Office of Administrative Hearings for a contested case hearing; the assigned ALJ subsequently granted Regence's request to participate as a party in the proceeding.

The contested case hearing was held on February 4 and 5, 2009, and both sides presented expert testimony—including, on petitioner's behalf, testimony by Larry Kirsch, whose analysis is the predicate for several of petitioner's contentions on judicial review. The central question before the

---

[7] At the request of the department, we have taken judicial notice of that delegation. Petitioner indicated at oral argument that she had no objection to us doing so.

[8] ORS 731.240 provides:

"(1) The Director of the Department of Consumer and Business Services shall hold a hearing upon written demand for a hearing by a person aggrieved by any act, threatened act or failure of the director to act. The demand must state the grounds therefor.

"(2) To the extent applicable and not inconsistent with subsection (1) of this section, the provisions of ORS chapter 183 shall govern the hearing procedure and any judicial review thereof."

ALJ was whether the department properly applied the standards and criteria in ORS 742.005 in approving the rate filing.[9]

Before the hearing, petitioner served subpoenas on Streisinger and Lundberg to appear and testify. The department filed motions to quash those subpoenas, which the ALJ denied. On review pursuant to OAR 137-003-0640(1)(a), an authorized representative of the department reversed the ALJ's ruling and granted the department's motions to quash.[10] Consequently, neither Streisinger nor Lundberg testified at the hearing.

After the hearing, the ALJ issued a proposed order in which, after a detailed discussion of the evidence and the relevant statutory criteria, the ALJ concluded that the department's review of Regence's rate filing complied with ORS 742.005(3), (4), and (6). The ALJ found that the department's decision to approve the rate filing was based on the following factors:

[9] Typically, in the absence of statutory or regulatory provisions indicating otherwise, the ALJ in a contested case proceeding under the APA would act as the initial finder of fact as to facts material to proposed agency action, and the ALJ's findings, as ultimately adopted, would, in turn, be subject to judicial review for substantial evidence. *See* ORS 183.470(2) (final order in contested case proceeding shall include findings of fact, which "shall consist of a concise statement of the underlying facts supporting the findings as to each contested issue of fact"); ORS 183.482(8)(c) (on judicial review, court shall set aside or remand an order that is not supported by substantial evidence in the record). Here, however, the parties and the ALJ agreed that, under ORS 731.240, the ALJ's function with respect to the department's approval of the rate increase was more akin to a "procedural" or "substantial evidence" review of the agency's final action. That is, the parties agreed that the issue before the ALJ was not to review Regence's proposal *de novo* and to set the amount of the rate increase (if any) based on the ALJ's own assessment of conflicting evidence pertaining to the criteria prescribed in ORS 742.005; rather, the ALJ's review was limited to determining whether the department had erred as a matter of law in its construction and application of the standards prescribed in ORS 742.005 and, if not, whether the department's determination that those criteria were satisfied comported with substantial evidence. Or, as the ALJ stated it: "[D]id the agency head make an acceptable decision under—within the standards that they were supposed to consider?"

[10] The version of the rule then in effect—OAR 137-003-0640(1)(a) (Jan 1, 2004)—provided that review of an ALJ's ruling on a motion to quash a subpoena in a contested case proceeding was by the agency. Thus, in this case, the department reviewed its own motion to quash. The rule has since been amended to provide that review is by the chief administrative law judge, rather than the agency. *See* OAR 137-003-0640(1)(a) (Jan 31, 2012).

"(1) the losses Regence was currently experiencing on the individual health line; (2) the adverse financial projections; and (3) the moderate average rate increases that policyholders would experience over the period of July 1, 2005 through July 1, 2008."

As noted, the director then issued a final order adopting and incorporating the decision of the ALJ.[11] It is that order that is the subject of this judicial review.

In her first three assignments of error on review, petitioner contends that the director "erred in concluding that there was substantial evidence that [the department] complied with" subsections (3), (4), and (6), respectively, of ORS 742.005 in approving the rate increase. *See* ORS 183.482(8)(c) (court shall set aside or remand agency order "if the court finds that the order is not supported by substantial evidence in the record"). Specifically, petitioner contends that the director, in each instance, failed to "articulate a rational connection between the facts and the legal conclusions that it draws from them." (Boldface and internal quotation marks omitted.) That is a "substantial reason" argument.[12] *See Simpson v. Board of Parole*, 237 Or App 661, 663, 241 P3d 347 (2010) (under ORS 183.482(8)(c), an agency's "findings of fact [must] be supported by substantial evidence and that its conclusions [must] be supported by substantial reason, *i.e.*, its conclusions must reasonably follow from the facts found"); *see also Drew v. PSRB*, 322 Or 491, 500, 909 P2d 1211 (1996) ("[A]gencies * * * are required to demonstrate in their opinions the *reasoning* that leads the agency from the *facts* that it has found to the *conclusions* that it draws from those facts." (Emphasis in original.)). In response, the department and Regence contend that the department's application of ORS 742.005 was within the range of discretion provided by the statute and that the director's explanation with respect to

---

[11] Thus, in the discussion that follows, we ascribe the ALJ's findings and conclusions to the director.

[12] As noted, petitioner does not specifically challenge any of the director's factual findings. *See* 249 Or App at 614 n 2. Significantly, she also does not contend that the director erroneously interpreted the statute. *See* ORS 183.482(8)(a) (court shall set aside or modify the order or remand the case "[i]f the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action").

each of the statutory criteria "logically connects the evidence in the record and the director's conclusion."[13]

So framed, the issue before us reduces to whether the director articulated a rational connection between the facts found and the legal conclusions that she drew from those facts—that is, her conclusions that the department properly applied each of the statutory criteria in approving the rate filing.[14] We discuss each of those criteria in turn, beginning with the requirement that the filing not be "prejudicial to the interests of the insurer's policyholders." ORS 742.005(3).

Petitioner argues that the director erred in concluding that the department, in approving Regence's request, properly applied the "not prejudicial" standard of ORS 742.005(3). Petitioner asserts that is so for any of three reasons: (1) ORS 742.005(3) was not explicitly referenced during the rate review process; (2) Fitzpatrick's testimony regarding the meaning of "prejudicial" indicated that the department had no consistent understanding of that criterion and its proper application; and (3) according to petitioner's expert, Kirsch, the department failed to consider policyholder income in analyzing "affordability" and failed to adequately consider the threat of "death spiral."[15]

We are not persuaded. With respect to petitioner's first two assertions, the director found that the department had carefully and consistently considered the impact that the requested increase would have on policyholders, pointing to the testimony of the department's witnesses and spread-sheets prepared by Fitzpatrick in which he "modeled different options available to Regence's individual policyholders to reduce the impact of the proposed rate increase." One of the department's witnesses was Swenson, a consultant who

---

[13] We note that Regence also raises an alternative basis for affirming the order; given our analysis and disposition, we do not reach or resolve that matter.

[14] That is consistent with the parties' framing of the issues below. *See* 249 Or App at 617 n 9.

[15] Kirsch testified that "death spiral" is a phenomenon that occurs when rising premiums cause insureds with the lowest risks to leave a company, leaving the insurer with a larger pool of higher risk policyholders, so that the company must raise rates again, and the spiral continues until the risk pool is "no longer sustainable."

reviewed the rate filing and actuarial documents for the department. He testified that, as part of its rate review, the department considers whether the rate provides a good value for the policyholder. Swenson also testified that Fitzpatrick's analysis showed "the effect the premium rate increase would have on the premiums paid by members and it showed what the distribution of those members were and how many of them would be affected at different levels," which, "in essence is—is addressing that very specific type of question that is raised by [subsection (3)]." The director also explained that,

> "[a]s part of the approval process, the Department's actuaries and decision makers reviewed Regence's historical and forecasted claims costs and premiums, the incurred and forecasted losses, the rate history of the individual health insurance line for the previous three years, enrollment projections and other carriers' rates."

From those facts, the director logically reasoned that the department properly and appropriately considered, in accordance with ORS 742.005(3), whether the increase would be "prejudicial" to the interests of Regence's policyholders.

Petitioner's arguments to the contrary misapprehend the nature of our review. First, we do not understand petitioner to be arguing that, as a *matter of law*, an assessment of prejudice under ORS 742.005(3) must be based on the "affordability" and "death spiral" analyses propounded by petitioner's expert, Kirsch. Rather, she essentially contends that her evidence—in particular, Kirsch's testimony—was more *persuasive* than that offered by the department. However, "[o]ur duty * * * is not to reweigh the opposing testimony to determine which is more persuasive; it is to decide whether a rational person, viewing the whole record, could reach the same findings as [the agency]." *AFSCME Council 75 v. Josephine County*, 234 Or App 553, 562-63, 228 P3d 673 (2010); *see also Armstrong v. Asten-Hill Co.*, 90 Or App 200, 206, 752 P2d 312 (1988) (court will overturn an agency order only if "the credible evidence apparently weighs overwhelmingly in favor of one finding" and the board finds the other without providing substantial reason in the order for doing so). Under that standard, we reject petitioner's first assignment of error.

In her second assignment of error, petitioner challenges the director's conclusion that the department's approval of Regence's requested rate increase was consistent with subsection (4), which requires disapproval if there are "unjust, unfair or inequitable" provisions. ORS 742.005(4). In that regard, she first points to Fitzpatrick's testimony that he did not think that subsection (4) applied in this context and asserts that the director erred because the evidence in the record thus indicates that the department never considered that requirement. However, the director specifically found that—notwithstanding Fitzpatrick's testimony—"the record establishes that [Fitzpatrick] and other Department reviewers considered whether the proposed rate increase was unfair or inequitable." In so finding, the director referred to Fitzpatrick's consideration of the impact of the rate increase on policyholders (discussed above), as well as his efforts to outline policyholders' options for reducing any impact. The director further noted that "the Department also required Regence to explain and justify, through projections and financial information, the need for such a substantial rate increase." Thus, the director's determination that the department did, in fact, consider and apply the criteria in subsection (4), notwithstanding Fitzpatrick's testimony to the contrary, comports with substantial reason.

Next, petitioner argues that the director's determination as to the department's application of subsection (4) must fail because the department failed to conduct a "rate equity analysis" as described by Kirsch.[16] Petitioner contends: "Mr. Kirsch * * * described how rate equity should be analyzed, yet the record demonstrates the Department never carried out this analysis." Again, petitioner misapprehends the nature of substantial evidence/substantial reason review under the APA. In the absence of a contention that, *as a matter of law*, the statute compels the rate equity analysis proposed by Kirsch—an argument that petitioner does not make—the director was not required to accept Kirsch's proposed methodology for assessing whether Regence's rate filing complied with subsection (4). Rather, as explained above,

---

[16] Kirsch defined "rate equity" as meaning that "premiums should be proportionate to the risks," in other words, "if you have two people who are—have equivalent risk, the premium, in general, should be the same."

Kirsch's testimony was evidence that the director weighed, along with the other evidence in the record, in determining whether the department properly considered whether the rate filing was "unjust, unfair or inequitable." The director's explanation, discussed above, is adequate to support the determination that the department appropriately considered those factors in approving the filing.

We turn, then, to the final statutory standard—whether "the benefits provided * * * are not reasonable in relation to the premium charged." ORS 742.005(6). Petitioner's arguments pertaining to that criterion relate primarily to the department's application of the "target loss ratio" concept. Petitioner asserts that Fitzpatrick's initial concern about the large change in target loss ratio underlying Regence's request demonstrates that the ratio is irreconcilable with "the statutory mandate requiring a reasonable relationship between benefits and premiums." We disagree. As the director explained, Fitzpatrick determined, after reviewing additional information submitted by Regence—which included historical and projected claims costs, incurred and forecasted losses, and the rate history of the individual health insurance line for the previous three years—that Regence's target loss ratio, which was still well above the minimum acceptable level set out in the NAIC guidelines, was acceptable. Based on those guidelines and data indicating that Regence was incurring a significant loss on its individual health insurance line, the department also determined that the target loss ratio change underlying Regence's rate request was necessary to sustain the individual health insurance product line—which, in turn, supported the department's ultimate determination that the rate increase represented a reasonable relationship between benefits provided and premiums charged.

Petitioner appears to dispute two aspects of the director's explanation—first, its reliance on the NAIC guidelines, and second, the shift in analytical focus from the financial status of Regence as a whole to the sustainability of the individual health insurance line. However, petitioner fails to explain why either of those circumstances provides a basis to overturn the director's order. Petitioner points out that

Kirsch's testimony "categorically rejected" the NAIC approach, observing that other states have adopted higher minimum loss ratios. However, once again, the director was not, as a matter of law or substantial reason, obligated to accept Kirsch's opinion.[17] Petitioner further argues that the department's emphasis on the viability of the individual health insurance line was "incompatible" with Fitzpatrick's and Kirsch's testimony "stating that it was *acceptable* for one line of business to be subsidizing another." (Emphasis added.) According to petitioner, that purported "incompatib[ility]" demonstrates that the department "was operating without any consistent methodology." With respect, petitioner's logic does not scan. The fact that the experts agreed that cross-subsidization across lines is *acceptable* does not mean that the statute prohibits the board from considering the financial viability of a particular line in measuring the reasonability of "benefits to premiums."

In sum, we conclude that the director's final order, determining that the department's approval of Regence's rate increase was consistent with ORS 742.005(3), (4), and (6), is supported by substantial reason. Accordingly, we reject petitioner's first three assignments of error.

As noted above, petitioner also assigns error (in her fourth assignment) to the quashing of subpoenas issued to Streisinger and Lundberg. Invoking *Citizens to Preserve Overton Park v. Volpe*, 401 US 402, 91 S Ct 814, 28 L Ed 2d 136 (1971) (*Overton Park*), *overruled on other grounds by Califano v. Sanders*, 430 US 99 (1977), she contends that the department's action in quashing the subpoenas deprived her of procedural due process under the Due Process Clause of the Fourteenth Amendment.[18] In *Overton Park*, the Supreme

---

[17] Petitioner also implies, citing *The Steel Yard, Inc. v. Natl. Council on Comp. Ins.*,127 Or App 267, 873 P2d 332 (1994), that the department was prohibited from applying the NAIC standards "without any rulemaking or even so much as an internal memorandum." *Steel Yard* simply does not stand for that proposition. Moreover, the director did not determine that the department's approval comported with subsection (6) solely because the proposed target loss ratio exceeded the NAIC minimum standard; rather, it was merely one factor militating in favor of her conclusion.

[18] Petitioner also asserts, without explanation, that the department's refusal to comply with the subpoenas violated ORS 183.440 (providing, in part, that "an

Court held, *inter alia*, that the Secretary of Transportation was not required, under the federal Administrative Procedure Act (the Act), 5 USC § 551, *et seq.*, to make formal findings in connection with its authorization of the use of federal funds for a highway construction project, but that it was necessary to remand the case to the district court for plenary review of the Secretary's decision based on the "full administrative record" as required by section 706 of the Act. 401 US at 420. In remanding, the Supreme Court observed that "inquiry into the mental processes of administrative decision-makers is usually to be avoided"; thus, "where there are administrative findings that were made at the same time as the decision * * *, there must be a strong showing of bad faith or improper behavior before such inquiry may be made." *Id.* However, the Court continued, where there are no such formal findings, "it may be that the only way there can be effective judicial review is by examining the decisionmakers themselves." *Id.*

As petitioner acknowledged at oral argument, her argument is based on the latter principle of *Overton Park*—essentially that, because the administrative record in this case—specifically, the record of the April meeting between Regence executives and department officials—is incomplete, the testimony of Streisinger and Lundberg is necessary for effective judicial review.

In rejecting that argument, we note, initially, that the Court's decision in *Overton Park* was based on the provisions of the federal Administrative Procedure Act, and petitioner does not explain why the same result would obtain under the Due Process Clause. Further, even to the extent that the Court's reasoning in *Overton Park* is grounded in notions of constitutional due process, it still does not compel the result that petitioner advocates for here. That is so for at least two interrelated reasons.

First, petitioner seems to contend that the record is inadequate—for *Overton Park* purposes—precisely *because*

---

agency or hearing officer in a contested case may issue subpoenas upon the request of a party * * * upon a showing of general relevance and reasonable scope of the evidence sought") and ORS 731.240 (set out above, *see* 249 Or App at 616 n 8). We reject that argument without discussion.

the two officials did not testify. However, *Overton Park* does not stand for the proposition that, in the absence of testimony from decision-makers, the record of an evidentiary hearing is *necessarily* inadequate for effective judicial review. Rather, as discussed above, the Court held only that such testimony "may be" needed. 401 US at 420. (Indeed, the Court explicitly held that the district court on remand was "not * * * required to make such an inquiry." *Id*. at 420.) *See also Olsen v. U.S.*, 414 F3d 144, 155 (1st Cir 2005) ("[S]upplementation of the record *may* be permissible where there is a 'failure to explain administrative action as to frustrate effective judicial review.' " (quoting *Camp v. Pitts*, 411 US 138, 142-43, 93 S Ct 1241, 36 L Ed 2d 106 (1973)) (emphasis added).

Second, to the extent petitioner is arguing that the record is inadequate because the details of the April meeting between Regence executives and department officials are otherwise not available, that is simply inaccurate. Tom Wortman, a Regence executive who was present at the April meeting, testified at the contested case proceeding and responded to questions from petitioner's counsel about what occurred at that meeting. Moreover, the record contains hundreds of pages of documents and testimony from the department's actuaries explaining how Regence's rate filing was reviewed and approved.[19] In short, petitioner has not established that her inability to question the two officials about the meeting has so frustrated effective judicial review that compelling their testimony was required under the principles expressed in *Overton Park*.

Affirmed.

---

[19] We note also that neither Streisinger nor Lundberg were the decision-makers with respect to the initial approval of Regence's rate filing. As noted above, *see* 249 Or App at 616, Streisinger delegated that authority to Kipper.