Argued and submitted May 4, 1995, decision of the Court of Appeals reversed; order of PSRB vacated, and case remanded to PSRB for further consideration
February 1, 1996

## HEATHER MARIE DREW,
*Petitioner on Review,*

*v.*

## PSYCHIATRIC SECURITY REVIEW BOARD,
*Respondent on Review.*

(PSRB 92-1219; CA A77638; SC S41649)

909 P2d 1211

Harris S. Matarazzo, Portland, argued the cause and filed the brief for petitioner on review.

Michael D. Reynolds, Assistant Solicitor General, Salem, argued the cause for respondent on review.

GILLETTE, J.

## GILLETTE, J.

This is a case involving the continuing commitment of petitioner to the Oregon State Hospital (OSH) by an order of respondent Psychiatric Security Review Board (PSRB). The Court of Appeals affirmed PSRB's order without opinion. We allowed petitioner's petition for review to assess her claim that PSRB's order was not supported by substantial evidence. For the reasons that follow, we reverse the decision of the Court of Appeals and remand the case to PSRB for further consideration.

Petitioner was charged in Douglas County with the offense of forgery in the first degree, in connection with her negotiation of two checks that she had stolen. Pursuant to an agreement with the district attorney and a stipulation filed in court, petitioner was found by the trial court to be guilty except for insanity. ORS 161.295.[1] She was committed to the supervision of PSRB for a period of five years, because the court determined that the crime for which she would have been convicted but for her insanity was a felony and that she was "affected by mental disease or defect and presents a substantial danger to others requiring commitment to a state mental hospital." ORS 161.327(1). At the same time, however, the trial court determined (again, pursuant to the parties' stipulation) that petitioner could "be adequately controlled with supervision and treatment through [the] Douglas County Mental Health [Department]." Accordingly, petitioner was released to the supervision and care of the Douglas County Mental Health Department, subject to a number of conditions.

The order committing petitioner to the custody of PSRB was entered on August 14, 1992. Less than three weeks later, on August 31, petitioner was taken into

---

[1] ORS 161.295 provides:

"(1) A person is guilty except for insanity if, as a result of mental disease or defect at the time of engaging in criminal conduct, the person lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law.

"(2) As used in [the Oregon Criminal Code], the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct, nor do they include any abnormality constituting solely a personality disorder."

protective custody by Douglas County authorities after she punctured her wrist with a thumb tack and advised a police officer that she felt suicidal. Her caseworker asked that her conditional release be revoked. The conditional release was revoked, pursuant to ORS 161.336(5).[2] Also pursuant to that statute, a hearing was held before PSRB to determine whether petitioner's conditional release should be revoked or continued or whether, in the alternative, petitioner should be discharged. The hearing was held on September 28, 1992 — just six weeks after petitioner first was placed under the jurisdiction of PSRB.

The only witness at the hearing was a social worker, Colvin, who worked on the ward where petitioner was housed at OSH. She had known petitioner for approximately three and one-half weeks. Because petitioner's treating psychiatrist, Dr. Reichlin, was unavailable, Colvin provided testimony to supplement Reichlin's written report concerning petitioner's condition, as that condition manifested itself at OSH.

Colvin testified that petitioner was suffering from various conditions, *viz.*, "attention deficit disorder with hyperactivity," "Tourette's syndrome," and "academic problems with mild mental retardation." She described petitioner as someone with poor impulse control who frequently was verbally "in the[] face" of others, but who did not act out aggressively toward anyone. Colvin acknowledged that, on one occasion, petitioner had become so angry and frustrated on the ward that it had been necessary to remove her to another room, but stated that petitioner had gone willingly. Although her testimony generally was favorable toward the idea of petitioner's being released from OSH, Colvin acknowledged that she did not know the specific reason why petitioner's conditional release had been revoked.

All the rest of the evidence before PSRB was comprised of exhibits. Those exhibits included the trial judge's

---

[2] ORS 161.336(5) provides in part:

"If at any time while the person is under the jurisdiction of the board it appears to the board or its chairman that the person has violated the terms of the conditional release or that the mental health of the individual has changed, the board or its chairman may order the person returned to a state hospital * * * for evaluation or treatment."

original conditional release order, the factual stipulations that had led to that order, the police reports concerning the offense that had led to the present case, and an eight-page psychological workup of petitioner by a forensic psychologist in connection with the criminal charges that she had faced, as well as Dr. Reichlin's report. The concluding paragraph of Dr. Reichlin's report is a reasonable summary of petitioner's status, as portrayed by the record as a whole:

"Regarding the PSRB jurisdictional elements, it appears very likely that she suffers from a mental disease or defect. However, her dangerousness [toward herself or others] is possibly questionable. I have not found any clear evidence that she has a history of dangerous acts toward others. She has been self-destructive, although mildly so, and she does not take care of herself very adequately even with a great deal of help. The crime for which she came under the jurisdiction of the PSRB, forgery, hardly involves physical violence toward others. The other crimes which appear on her rap sheet are two counts of criminal trespass, which, by her description, also were nonviolent behaviors. She has been accused of being a bad driver, and she does not dispute having stolen a car and driving without a license. On the other hand, it is unclear whether she used the car in a way that placed others at risk. I also note that [the forensic pathologist's] appraisal that she is physically aggressive is modified as 'perhaps, occasionally.' "

As pertinent to our review of this case, PSRB made the following findings of fact:

"[Petitioner] is affected by a mental disease or defect * * *.

"[Petitioner], without adequate supervision and treatment, would continue to present a substantial danger to others * * *. The Board * * * was convinced by a preponderance of the evidence that [petitioner's] mental limits, impulse problems and lack of judgment cause her to be a substantial danger to others.

"* * * * *

"The State sustained its burden of proving by a preponderance of the evidence that [petitioner] continues to be affected by a mental disease or defect and continues to be a substantial danger to others and that she should not be discharged from the jurisdiction of the Board."

PSRB ordered that petitioner's commitment to its supervision continue.

Petitioner then sought judicial review of PSRB's order in the Court of Appeals. Her sole argument before that court was that the order continuing her within the jurisdiction of PSRB was not supported by substantial evidence and that, more specifically, there was no substantial evidence that, if she were to be released, she would present a substantial danger to others. PSRB, after acknowledging that, "although the evidence of future dangerousness certainly is not as compelling as it sometimes is in PSRB cases," argued that the evidence nonetheless was "in the Board's view * * * sufficient to support [a] finding [of dangerousness], when viewed under the deferential standard of review that should be exercised of PSRB orders." The Court of Appeals affirmed the order of PSRB without opinion. *Drew v. Psychiatric Security Review Board*, 127 Or App 753, 875 P2d 546 (1994). We allowed petitioner's petition for review to determine whether there was substantial evidence on the whole record to support the facts found by PSRB and to assess the correctness of PSRB's assertion that its determinations in this kind of case are entitled to some sort of "deference."

PSRB's continuing jurisdiction over persons such as petitioner must be based on the fact that such persons are found by PSRB, by a preponderance of the evidence, to be "affected by a mental disease or defect and [to] present[] a substantial danger to others." ORS 161.336(5).[3] Judicial review of PSRB orders such as the one at issue in this case is provided for by ORS 161.385(8):

> "(a)   When a person over whom the board exercises its jurisdiction is adversely affected or aggrieved by a final order of the board, the person is entitled to judicial review of the final order. * * *
>
> "(b)   The order and the proceedings underlying the order are subject to review by the Court of Appeals upon petition to that court filed within 60 days of the order for which review is sought. * * *

[3] Although petitioner originally was brought to PSRB's attention because of concerns about danger to herself, PSRB chose to continue her commitment because of a danger to others. We analyze this case for evidence addressing the latter standard.

"(c)   The court may affirm, reverse or remand the order on the same basis as provided in ORS 183.482(8)."[4]

■      Petitioner does not deny that she suffers from a mental disease or defect sufficient to permit PSRB to assert jurisdiction over her. Her sole argument to this court (as it was to the Court of Appeals) is that there is no substantial evidence in the present record to meet the other half of the statutory test that is relevant here, *viz.*, the requirement that she constitute a substantial danger to others. PSRB's argument in response has three interrelated elements, all of which are aimed at persuading this court that it should grant to PSRB decisions in this area some measure of "deference." We address each of those interrelated arguments in turn:

(1)   The legislature has directed PSRB to "have as its primary concern the protection of society." ORS 161.336(10). It is true that PSRB is supposed to guard the public interest. We assume that it makes its decisions with that legislative admonition in mind. But there is no logical connection between that standard and a reviewing court's duty to ensure that agencies act only when justified by substantial evidence.

(2)   Determinations of future dangerousness suffer from inherent uncertainty, because future human action is inherently uncertain. Such a decision, involving (as it necessarily does) evaluation and weighing of a person's character, capabilities, mental health, and personal history, is akin to parole decisions in the traditional criminal law arena. Indeed, the legislature has recognized that similarity, PSRB asserts, by requiring that at least one PSRB member have "substantial experience in the processes of parole and probation." ORS 161.385(2)(c). From the foregoing, PSRB derives the proposition that its decisions are entitled to deference from a reviewing court.

---

[4] Orders of PSRB must be based on findings of fact. Those findings must be supported by substantial evidence on the whole record, a requirement imposed by ORS 183.482(8)*(c)*. That statute provides:

"The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

It is true that decisions such as those involving future dangerousness may be difficult. But their difficulty, coupled with the fact that they may carry with them the involuntary incarceration of a person, does nothing to suggest any justification for deferring to PSRB's finding that a person presents a substantial danger to others. PSRB's second argument for deference is no more persuasive than its first.

(3)  Finally, PSRB argues that

"this court should exercise a more deferential review than it would in other cases, because of the expertise of the Board members. The legislature has directed that the membership of the PSRB shall include a psychiatrist and a psychologist. ORS 161.385(2). The Board should therefore be entitled to utilize its own expertise in evaluating the evidence. A report from an expert in the field of psychology may use specialized terminology that may mean one thing to a lay person, and another to a fellow expert in the field. Again, this suggests that a more deferential standard of review should be applied."

A somewhat less flattering, but equally accurate, summary of this last argument is as follows: "There's enough evidence but, even if it doesn't seem like enough to you — trust us. We have expertise beyond that of the average person in these cases, and we're satisfied." Seen in this light, it should come as no surprise that we reject the argument.

The Court of Appeals faced essentially this same argument, and rejected it, over a decade ago. That court then explained:

"It is one thing * * * to say that an agency may employ its experience and expertise to evaluate and understand evidence and quite another to allow it to use its special knowledge as a substitute for evidence presented at a hearing. A fundamental premise of administrative law is that the quality and efficiency of the regulatory process will be enhanced by delegating authority to experienced, expert administrators. Just as fundamental, however, is the principle that factfinding in contested cases is governed exclusively by the record of the hearing.

"* * * [E]xclusiveness of the record is at the core of the right to a fair hearing. Without that principle the hearing itself can be but a sham. * * * Only if the agency is limited

to the record of the hearing can the private party have assurance that he not only has a full opportunity to present his case but, more important, opportunity to confront and rebut the entire case against him. Without the exclusiveness principle the right to be heard is a right only to present one side of the case. The hearing itself becomes only an administrative town meeting rather than the adversary proceeding required by due process.' B. Schwartz, *Administrative Law* 358 (1976)."

*Rolfe v. Psychiatric Security Review Board*, 53 Or App 941, 951, 633 P2d 846, *rev den* 292 Or 334 (1981). We agree with that statement and adopt it as our own.

The substantial evidence rule is a safeguard for anyone faced with the possibility of adverse consequences from a decision of an administrative agency. The rule loses its meaning if it is interpreted as leaving to the internal "expertise" of agency personnel, rather than to the external scrutiny of appellate courts, the critical question whether the facts of the case permit the administrative choice involved.

■  Rejection of PSRB's rationale does not mean that its finding that petitioner was a substantial danger to others was not supported by substantial evidence, however. This is a case in which petitioner actually was *adjudicated* to be dangerous to others on August 14, 1992. The hearing in the present case was held less than seven weeks later. Petitioner did not assert at the time of the hearing, nor has she ever asserted since, that it was impermissible for PSRB to consider any portion of the record before it, including the stipulation and the trial court's original findings. It would have been permissible for PSRB to infer that petitioner's condition, so recently adjudicated, persisted. Certainly, no rule of law required PSRB to accept petitioner's arguments based on the equivocal evidence to the contrary. *See generally Reguero v. Teacher Standards and Practices*, 312 Or 402, 417-22, 822 P2d 1171 (1991) (discussing methodology of substantial evidence review). Thus, the record contains substantial evidence that could support PSRB's finding that petitioner was a substantial danger to others, but PSRB did not connect its decision to that evidence.

Since 1975, a long and consistent line of decisions from the Court of Appeals has held that, in addition to the

statutory requirement that findings be supported by substantial evidence, agencies also are required to demonstrate in their opinions the *reasoning* that leads the agency from the *facts* that it has found to the *conclusions* that it draws from those facts. *See, e.g., Home Plate, Inc. v. OLCC*, 20 Or App 188, 530 P2d 862 (1975) (illustrating requirement); *McCann v. OLCC*, 27 Or App 487, 556 P2d 973 (1976), *rev den* 277 Or 99 (1977) (same). This court has followed the lead of the Court of Appeals and adopted the same rule. *See Ross v. Springfield School Dist. No. 19*, 294 Or 357, 370, 657 P2d 188 (1982) ("It is essential that an agency articulate in a contested case the rational connection between the facts and the legal conclusion it draws from them."). An admirable summary of the reasons justifying this Oregon rule may be found in *Williams v. SAIF*, 310 Or 320, 329, 797 P2d 1036 (1990) (Unis, J., specially concurring):

> "There are practical reasons for the requirement expressed in ORS 183.470(2) that an administrative agency state its factual findings and articulate a rational connection between the facts it finds and the legal conclusions it draws from them. Such articulation facilitates meaningful judicial review, *Ross v. Springfield School Dist. No. 19*, 294 Or 357, 370, 657 P2d 188 (1982); enables the court on judicial review to give an appropriate degree of credence to the agency interpretation, *Springfield Education Assn. v. School Dist. No. 19*, 290 Or 217, 228, 621 P2d 547 (1980); 'serve[s] to assure proper application of the law in the individual case,' *Ross v. Springfield School Dist. No. 19*, 300 Or 507, 517, 716 P2d 724 (1986); *Ross v. Springfield School Dist. No. 19, supra*, 294 Or at 370; prevents judicial usurpation of administrative functions, Davis, Administrative Law Text 321, § 16.03 (3d ed 1972); assures more careful administrative consideration, *i.e.*, protects against careless or arbitrary action, *id.* at 321-22; provides a source of guidance for agency personnel as well as for persons governed by the statute, *Ross v. Springfield School Dist. No. 19, supra*, 300 Or at 517; helps develop and maintain the consistency in administration, *id.*; facilitates the parties' planning, *i.e.*, helps parties plan their cases for rehearings and judicial review, Davis, Administrative Law Text, *supra*, at 322; and keeps agencies within their jurisdiction. *Id.*"

(Footnote omitted.)

Under the rule of *Ross, Home Plate*, and the legion of cases that have followed them, the agency's failure to connect

permissibly its facts and its holding is fatal to the agency's order. That order must be vacated and the case remanded.

The decision of the Court of Appeals is reversed. The order of the Psychiatric Security Review Board is vacated. The case is remanded to the Psychiatric Security Review Board for further consideration.