Argued and submitted April 5, affirmed December 8, 2004

Sue BAN,
dba Quincy Store,
*Petitioner,*

*v.*

OREGON LIQUOR CONTROL COMMISSION,
*Respondent.*

02-L-001 and 02-V-008; A121337

102 P3d 744

Michael V. Reed argued the cause and filed the brief for petitioner.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Armstrong, Presiding Judge, and Brewer, Chief Judge,* and Deits, Judge pro tempore.

DEITS, J. pro tempore.

Armstrong, P. J., dissenting.

* Brewer, C. J., *vice* Leeson, J. pro tempore.

### DEITS, J. pro tempore

Petitioner seeks review of an order of the Oregon Liquor Control Commission (OLCC) denying her application for a liquor license. She assigns error to the OLCC's conclusion that she should not be given a liquor license because she did not have a good record of compliance with the alcoholic liquor laws of the state, as required by ORS 471.313(4)(g).[1] We affirm.

The relevant facts are not in dispute. Petitioner applied for a liquor license for her store in Clatskanie, named "Quincy Store," on November 5, 2001. The OLCC issued her a 90-day temporary license to operate on November 8, 2001. The OLCC conducted a minor decoy operation at Quincy Store on January 26, 2002.[2] The OLCC found the following facts in its order denying her application:

"When [the decoy] entered the store, he walked over to a beer cooler, selected a six-pack of Budweiser beer and took it to the cashier counter. [Petitioner's] daughter * * *, who was nine years old at the time, was standing behind the cash register. [Petitioner] was standing just to [her daughter's] side. [Petitioner] said something to [her daughter] in Korean.

"* * * * *

"* * * [Her daughter] stated the price of the goods, rang up the sale, took the money and made the change. [Petitioner] stood next to [her daughter] and supervised the exchange. [Petitioner] confirmed that the change was correct and placed the beer in a bag."

---

[1] ORS 471.313 provides, in part:

"The Oregon Liquor Control Commission may refuse to license any applicant under the provisions of this chapter if the commission has reasonable ground to believe any of the following to be true:

"* * * * *

"(4) That the applicant:

"* * * * *

"(g) Did not have a good record of compliance with the alcoholic liquor laws of this state and the rules of the commission when previously licensed."

[2] A minor decoy operation is one in which a minor who meets specified criteria attempts to purchase alcohol from a licensee or permit holder. *See* OAR 845-009-0200(2).

On those facts, the OLCC concluded:

> "1.  [Petitioner] violated OAR 845-006-0335(1) by failing to verify a minor's age before selling him alcoholic beverages when the minor appeared to be under 26 years of age.
>
> "* * * * *
>
> "3.  [Petitioner] violated ORS 471.480(1) by permitting her nine-year-old daughter to sell alcoholic liquor."

As noted above, based on the above findings and conclusions, the OLCC refused to grant petitioner's request for a license "because she did not have a good record of compliance with the liquor laws of this state and the Commission's rules during the term of her temporary authority to operate."

Petitioner assigns error to the denial of her application. First, she argues that the OLCC has not enacted uniform standards for minor decoy operations in cities with a population of fewer than 20,000 as required by ORS 471.346(1) and (3). Petitioner contends that, because of that omission, under ORS 471.346(6), the OLCC was not entitled to consider the results of the minor decoy operation in Clatskanie, a city with fewer than 20,000 residents and, accordingly, the OLCC erred in relying on the results of that operation as a basis for denying her application.[3] Second, petitioner argues that the OLCC was wrong in concluding that her daughter sold alcohol to the minor decoy because she, and not her daughter, sold alcohol to the minor decoy and, therefore, the OLCC erred in relying on that finding as a basis for denying her application.

The OLCC responds that it has complied with ORS 471.346(1) by adopting OAR 845-009-0200 and, therefore, properly considered the results of the minor decoy operation when determining whether to grant petitioner a license. It

___

[3] ORS 471.346(6) provides:

"Notwithstanding any other provision of this chapter, the commission may not consider any sale of alcoholic beverages to a minor that results from a minor decoy operation that is not conducted in compliance with the standards established under this section for the purpose of imposing any civil penalty against a licensee, making a decision on the renewal, suspension or cancellation of a license issued under this chapter or otherwise sanctioning a licensee for the sale of alcoholic beverages to a minor."

also contends that it did not err in concluding that petitioner's daughter sold alcoholic beverages.

■   We turn to petitioner's first argument. ORS 471.346, the pertinent statute, provides, in part:

"(1)   The Oregon Liquor Control Commission shall by rule develop uniform standards for minor decoy operations used to investigate licensees and agents operating stores on behalf of the commission under ORS 471.750 for violations of the laws of this state prohibiting sales of alcoholic beverages to minors. Uniform standards established by the commission under this section apply to all investigations conducted by the commission that use minor decoys. The commission shall encourage all law enforcement agencies of this state to use the uniform standards established under this section for minor decoy operations conducted by the law enforcement agencies.

"* * * * *

"(3)   The uniform standards established by the commission under this section shall provide that minor decoy operations must be conducted on either a random or a targeted basis in cities with populations of 20,000 or more. Random minor decoy operations shall cover a range of retail outlets. Targeted minor decoy operations may be conducted for a single licensee or agent, but may be used only if there is a documented compliance problem with the specific licensee or agent that is the target of the operation. For the purpose of implementing standards for random minor decoy operations under this subsection, the commission shall by rule adopt a methodology that produces, to the greatest extent possible, an equal chance that any licensee or agent will be subject to a minor decoy operation."

In accordance with ORS 471.346, the OLCC adopted such rules. OAR 845-009-0200 provides, in pertinent part:

"(1)   Purpose. ORS 471.346 directs the Oregon Liquor Control Commission to develop, through rulemaking, uniform standards for minor decoy operations used to investigate licensees and agents operating stores on behalf of the Commission under ORS 471.750 for violations of the laws of this state prohibiting sales of alcoholic beverages. It is the Oregon Liquor Control Commission's intention that decoy operations are to be an impartial test of a licensee or agent's

ability and willingness to obey laws on preventing sale or service of alcoholic beverages to minors.

"(2) Uniform standards for minors used in minor decoy operations:

"(a) The minor must be under 21 years of age; and

"(b) The minor may not use false identification; and

"(c) The minor must look under the age of 26 years; and

"(d) The minor may not lie about [his or her] age.

"(3) Uniform standards for operations. In cities with populations of 20,000 or more, minor decoy operations must be conducted on either a random or targeted basis.

"(a) 'Random' decoy operations. Selection of the agent(s) or licensee(s) to be visited will be done using simple random sampling which ensures to the greatest extent possible that each licensee or agent has an equal chance of being selected. The simple random sampling may be performed using a variety of generally accepted simple random sampling tools, such as a random number table, a random number generator, or other method.

"(b) 'Targeted' minor decoy operations may be conducted for a single licensee or agent, but may be used only if there is a documented compliance problem with the specific licensee or agent that is the target of the operation."

It is petitioner's position that the above rule does not comply with the statutory requirement because, although it includes premises selection standards for cities with populations of 20,000 or more, it does not do so for cities with populations of fewer than 20,000. Petitioner contends that the statutory requirement that the OLCC must adopt uniform standards for decoy operations requires that the commission include premises selection standards for *all* cities. We disagree.

ORS 471.346 requires only that such standards for minor decoy operations be uniform. The OLCC's rule does include uniform standards. The requirement in the statute that targets of minor decoy operations be selected using one of two methods—random or targeted—applies only to operations in cities of 20,000 or more. ORS 471.346(3). There is not

such a selection requirement for cities of fewer than 20,000. Consequently, we conclude that, because it has enacted uniform standards for the minors involved in minor decoy operations, as required by ORS 471.346, the OLCC has complied with the statute.

■    We turn to petitioner's second argument under ORS 471.480(1). Petitioner argues that the OLCC's finding that petitioner's daughter sold the beer to the minor decoy is not supported by substantial reason or substantial evidence. The OLCC disagrees and argues that, "[u]nder any common-sense application of the term, the child 'sold' the beer to the minor decoy."

ORS 471.480(1) provides that "[a]ny employee 18 years of age or older of a person who holds an off-premises sales license from the Oregon Liquor Control Commission may sell any alcoholic liquor authorized by such license on the licensed premises." Both the OLCC and petitioner read the statute to prohibit anyone under 18 from selling alcohol. They disagree, however, about whether, in this case, petitioner's daughter sold beer to the minor decoy. In its order, the OLCC noted that "[t]here are a few [OLCC] cases that address when a 'sale' occurred, but the decisions do not focus on specific actions by, or the identity of, the seller. They therefore offer no guidance on the matter." It concluded that

"[petitioner]'s direct supervision of her daughter's actions does not detract from the fact that [her daughter] actually handled the money and conducted the transaction. The sale occurred by virtue of [her daughter] ringing up the goods, taking the money and making change. [Footnote omitted.] The fact that [her daughter] did not touch the beer does not militate against a finding that she made the sale.[8]

---

"[8] [Petitioner] participated in the transaction by bagging the beer, but this participation does not make her the person who made the sale. This situation is akin to a bagger at a supermarket; it is the checker or cashier who makes the sale, not the person who assists the checker by loading the groceries into bags."

We have not previously construed the meaning of the term "sell" in ORS 471.480(1). We consider the text and

context of the statute and, because "sell" is a term of common usage, we give it its "plain, natural, and ordinary meaning." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). In the context of the statute, "sell" means

> "to give up (property) to another for money or other valuable consideration : hand over or transfer title to (as goods or real estate) for a price ‹ *sold* his books › ‹ *sold* his house › ‹ *sold* his stock ›— opposed to *buy*."

*Webster's Third New Int'l Dictionary* 2061 (unabridged ed 1993) (emphasis in original). Consistently with that definition, we understand the term "sell" to mean "to give up to another for money or other valuable consideration" or to "hand over or transfer title to."

Under the facts of this case, there is no question that the OLCC's finding that petitioner's nine-year-old daughter "sold" the alcohol to the minor decoy is supported by substantial evidence. As the OLCC found, petitioner's daughter quoted the price for the beer, accepted the money, rang up the sale on the cash register, and gave change to the minor decoy. Clearly, she gave up a product in exchange for money. Contrary to petitioner's assertion, the fact that her daughter did not touch the beer does not mean that a sale did not occur or that she did not conduct the sale. It would make no sense to require that a seller touch an item before a sale could be said to occur. For example, a person could pick up a six-pack of beer, set it on the counter, purchase the beer, pick it up, and walk out without the store clerk ever having touched it. It would be absurd to say that those circumstances did not result in a sale, and such a result would be inconsistent with the apparent legislative intent to regulate the sale of alcohol. We also find petitioner's other arguments under this assignment of error without merit. Accordingly, we conclude that the OLCC did not err in holding that petitioner's daughter sold beer to the minor decoy in violation of ORS 471.480(1) and in denying petitioner's application for a liquor license.

Affirmed.

**ARMSTRONG, P. J.,** dissenting.

The majority affirms an Oregon Liquor Control Commission (OLCC) order that denied petitioner's application for a liquor license. I agree with the majority's rejection of petitioner's challenge to the minor decoy operation that led to the sale of beer on which the OLCC relied to deny petitioner's application. I disagree, however, with its conclusion that the OLCC adequately explained the basis for its finding that petitioner's nine-year-old daughter sold beer to the minor decoy.

Agencies must "demonstrate in their opinions the *reasoning* that leads the agency from the *facts* that it has found to the *conclusions* that it draws from those facts." *Drew v. PSRB*, 322 Or 491, 500, 909 P2d 1211 (1996) (emphasis in original). If an agency fails to explain its reasoning, we must vacate its order and remand it to the agency for further consideration. *Id.* at 500-01.

The majority concludes that the term "sell" means " 'to give up to another for money or other valuable consideration' " or to " 'hand over or transfer title to.' " 196 Or App at 552. In light of that definition, the OLCC order does not explain how the findings that it made about the daughter's actions support its conclusion that she sold the beer. The OLCC found that petitioner supervised and instructed her daughter throughout the sale. It also found that petitioner, and not her daughter, handled the beer. The OLCC did not focus on whether the daughter or petitioner or both gave up or transferred title of the beer to the minor. It focused, instead, on the daughter's handling of the money, her statement of the beer's price, and her operation of the cash register. Given the OLCC's findings that petitioner directly supervised her daughter throughout the sale and also handled the beer and gave it to the minor, the commission has not sufficiently explained how, in light of a correct understanding of the term "sells," the daughter sold the beer to the minor. I therefore would vacate the OLCC order and remand to the commission the issue whether the daughter sold the beer.

I respectfully dissent.