Submitted August 1, 2014, reversed and remanded August 19, 2015

Dennis R. HOOPER,
*Petitioner,*

*v.*

DIVISION OF MEDICAL ASSISTANCE PROGRAMS,
a division of the Oregon Health Authority,
*Respondent.*

Oregon Health Authority
A154410

356 P3d 666

Dennis R. Hooper filed the briefs *pro se.* Caitlin P. Shin and Davis, Wright, Tremaine LLP filed the supplemental brief.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Inge D. Wells, Assistant Attorney-in-Charge, filed the brief for respondent. On the supplemental brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Michael A. Casper, Senior Assistant Attorney General.

Jeffrey C. Dobbins, Professor, Willamette University College of Law, filed the brief *amicus curiae.*

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

NAKAMOTO, J.

**NAKAMOTO, J.**

Petitioner seeks judicial review of a final order of respondent Division of Medical Assistance Programs (DMAP), a division of the Oregon Health Authority, denying his request for a hearing after a provider refused to transport him for a medical appointment. As permitted by DMAP, petitioner sought reconsideration and requested referral of the factual issues concerning the timeliness of his hearing request to the Office of Administrative Hearings. DMAP denied reconsideration and denied petitioner's request for referral of the issues for hearing, which petitioner also challenges on judicial review. Before filing its answering brief, DMAP moved for dismissal, contending that this matter is now moot, given that petitioner no longer has a need for medical transportation to that appointment. In light of the Oregon Supreme Court's recent decision in *Couey v. Atkins*, 357 Or 460, 355 P3d 866 (2015), holding that the legislature acted within its authority in enacting ORS 14.175, we conclude that this case is justiciable under ORS 14.175 and choose to exercise our authority to issue a determination on the merits of petitioner's challenge. We reverse and remand because DMAP's order lacked substantial reason, and we do not reach the question whether DMAP must refer the timeliness issue for a hearing.

## I.  FACTS

Before we relate the procedural history, we briefly describe the nature of the dispute underlying petitioner's request for a hearing concerning medical transportation services, as petitioner has described it, for context. Petitioner is paralyzed and must use wheelchairs for mobility. He has health care coverage through the Oregon Health Plan. Two wheelchairs were stolen from his home in southwest Oregon, for which he sought a replacement. Under his health plan, he needed a physician's order to obtain the replacement wheelchair. His regular physician, in petitioner's local area, was unable to see him urgently and so recommended an appointment with another in-network physician who could see him immediately. Petitioner arranged such an appointment with a doctor whose offices were located farther away at Curry General Hospital and sought transportation

from TransLink, which provides transportation for eligible Oregon Health Plan clients traveling to receive medical care. TransLink initially told him by phone that it was going to deny his request.

Petitioner then sought to challenge TransLink's response. TransLink issued petitioner a "Notice of Action" dated October 30, 2012, but petitioner did not immediately receive that notice because TransLink had sent it to an incorrect address. The copy of the notice in the record contains petitioner's street address, not his post office box, which was his correct mailing address. Eventually, he received the notice from TransLink, which stated the basis for its denial of services. Petitioner submitted a written request for a contested case hearing, which DMAP's hearings unit received on December 19, 2012.

Although a hearing was scheduled for February 2013, a hearing representative for DMAP sent petitioner a letter dated December 21, 2012, stating that "clients must submit a hearing request within 45 days from the date of the notice" and that his request came 69 days from the date of the TransLink notice. She requested that petitioner provide her with "a written statement explaining any factors or circumstances that prevented [him] from completing [his] hearing request on time."

Petitioner submitted a written statement to DMAP's hearing representative, which the hearings unit received a week later. His statement contained the following explanation for the timing of his hearing request, which focused on TransLink's late delivery of its written notice denying services, his limited mobility, and his interim doctor appointments:

"Well, initially, it took me awhile to get a straight answer from TransLink. I had to be a liaison between my doctor's office and them, to get everyone on the same page. I gave my notice to appeal to TransLink via telephone. I then contacted my DHS caseworker and requested the appeal form; number 443, I believe. The caseworker stated that had to come from TransLink. After a week or so, I had not heard anything. I telephoned the quality assurance person at TransLink * * *, and she stated they had mailed it twice

to an incorrect address. They confused my mailing address with the physical address. After clarifying the correct mailing address, I reviewed the materials and researched the alleged relevant OAR's. I submitted the appeal form shortly thereafter.

"As a note, I still have no replacement wheelchair. I have been impeded by my using an ill-fitted, inappropriate, uncomfortable wheelchair, as interim mobility. Further, I have had several doctors' appointments and a wheelchair assessment during this time, which may have delay[ed] response time."

DMAP then issued an order in early January 2013 denying petitioner an opportunity to challenge TransLink's action. DMAP's "Late Filing" order acknowledged petitioner's written statement but informed him that "your letter did not describe circumstances beyond your control. Therefore, your hearing request is untimely and will be dismissed." DMAP's order did not provide any factual findings or any reasoning. The order stated that the February hearing was cancelled and provided petitioner with an opportunity to seek reconsideration of the decision within 60 days.

Petitioner obtained DMAP's acknowledgment that the hearing request had been received 50 days, not 69 days, after the date of the notice, *i.e.*, it was five days late. He then requested reconsideration on February 21, 2013. Petitioner informed the hearing representative that he had attempted to procure information from TransLink to corroborate that TransLink was at fault during the notification process, enclosing his letter to TransLink stating that an employee had admitted to him that TransLink had used the wrong address to send out the notice "at least twice." He requested a hearing on the factual issue of timeliness and asserted that his hearing request was either timely under DMAP's administrative rules or that there was good cause for any delay.

On May 13, 2013, more than 60 days after petitioner's request for reconsideration, DMAP issued its "Final Order on Reconsideration." That order purported to dismiss petitioner's request for reconsideration and stated that,

"[b]ecause the issue for which [petitioner] requested an Administrative Hearing cannot be provided (cannot go back

and provide transportation) and did not involve reimburse-ment, *the DMAP Hearing Representative and [petitioner] agreed that although his reconsideration request would be denied, a conversation with TransLink and response to his questions in his February 14, 2013 letter will be addressed separately.* The request for reconsideration submitted by [petitioner] is dismissed."

(Emphasis added.) However, by operation of law, peti-tioner's request for reconsideration had already been denied in April, pursuant to ORS 183.482(1).[1] As the Appellate Commissioner determined, despite the late issuance of the order on reconsideration, petitioner timely filed his petition for review.

## II.   JUSTICIABILITY UNDER ORS 14.175

### A.   *DMAP's Motion to Dismiss Based on Mootness*

As noted earlier, DMAP filed a motion to dismiss the petition for lack of jurisdiction, based on mootness. The Appellate Commissioner denied the motion. Although DMAP did not renew its mootness argument in its answering brief, we requested supplemental briefing from the parties to address the issue of mootness, given cases such as *Brumnett v. PSRB*, 315 Or 402, 406, 848 P2d 1194 (1993) ("Cases that are otherwise justiciable, but in which a court's decision no longer will have a practical effect on or concerning the rights of the parties, will be dismissed as moot."). We also received the brief of *amicus curiae* Jeffrey Dobbins, a professor at Willamette University College of Law. We requested briefing on two questions: (1) whether ORS 14.175 is applicable to the petition for judicial review and (2) if so, whether ORS 14.175 is itself constitutional. After we received the supplemental briefing, the Oregon Supreme Court decided *Couey*, holding that the legislature had authority to enact ORS 14.175 and remanding for the circuit court to determine whether to

---

[1] In pertinent part, ORS 183.482(1) provides:

"If a petition for rehearing has been filed, then the petition for review shall be filed within 60 days only following the date the order denying the petition for rehearing is served. *If the agency does not otherwise act, a petition for rehearing or reconsideration shall be deemed denied the 60th day following the date the petition was filed,* and in such cases, petition for judicial review shall be filed within 60 days only following such date."

(Emphasis added.)

exercise its discretion to adjudicate the case under the statute. 357 Or at 521-22. Having considered the supplemental briefing and *Couey*, we conclude that this case is governed by ORS 14.175 and that we may and should decide the merits of petitioner's appeal.

We begin with the basis for DMAP's motion to dismiss the appeal. DMAP argued that, even if we were to hold that petitioner was entitled to a hearing on the propriety of TransLink's refusal to provide him with medical transportation, the outcome of such a hearing would have no practical effect because TransLink refused to provide transportation to Curry General Hospital related to petitioner's attempt to get a replacement wheelchair, and he has since procured that wheelchair. Thus, DMAP argued, the question whether petitioner should have received a hearing is moot.

Petitioner responded that the case was not moot, because the parties' positions were still adverse and a decision on the ultimate question—whether TransLink could deny him medical transportation in the manner that it did—would have a practical effect on the parties given his ongoing medical transportation needs and his ongoing relationship with DMAP and TransLink:

> "In this case, petitioner seeks to restrain and or prevent future and present harm from laymen employees of respondent(s) interfering with needed medical appointments. Only a qualified medical professional should make determinations as to the urgency or validity of a medical appointment. These appointments should not be questioned by a layman merely scheduling transportation to a medical appointment.
>
> "Further, petitioner is still a client of all respondents and currently still receives all medical transportation through respondents and their contractors. The issue raised by petitioner has not been addressed or corrected by respondent(s) or their contractor(s), pertaining to verifying and authorizing medical appointments made by physicians or their staff. Petitioner is currently subject to the same ill-advised practices and interpretations of the Oregon Administrative Rules by respondent(s) which gave rise to this appeal. Therefore, this appeal is not moot and the Motion To Dismiss should be denied."

Petitioner further contended in his opening brief that TransLink relied on an irrelevant administrative rule to deny service to him. He also argued that the "medical urgency and/or necessity of a patient's needs should not be circumvented by TransLink, a non-medical agency[,]" and that TransLink, a "transportation broker," lacked "the medical knowledge to deny service that has previously been recommended" by his medical service providers.

The Appellate Commissioner ruled that the underlying dispute that petitioner sought to challenge in the first place, the propriety of TransLink's denial of petitioner's request for medical transportation, was not moot. The Commissioner explained that, although DMAP was correct that the case would not have a practical effect on petitioner's request for transportation to obtain a replacement wheelchair, "that is not the sole reason for petitioner's request for a hearing." Petitioner "also contests the manner in which respondent's vendor administers a medical assistance program." The Commissioner also explained that

> "a decision (whether or not in petitioner's favor) will assist in clarifying for petitioner whether he reasonably may expect future similar requests to be granted or denied, and assist respondent and its vendor in determining how it should respond to requests for transportation services ancillary to a need for medical assistance."

The Commissioner's ruling was based on, among other authorities, ORS 14.175.

B. *Application of ORS 14.175*

Under ORS 14.175, certain policies or practices by public bodies may be challenged as contrary to law, even though the particular controversy precipitating the action has resolved, if the challenged policy or practice continues in effect and other factors are met:

> "In any action in which a party alleges that an act, policy or practice of a public body, as defined in ORS 174.109, or of any officer, employee or agent of a public body, as defined in ORS 174.109, is unconstitutional or is otherwise contrary to law, the party may continue to prosecute the action and the court may issue a judgment on the validity of the challenged act, policy or practice even though the specific act,

policy or practice giving rise to the action no longer has a practical effect on the party if the court determines that:

"(1)   The party had standing to commence the action;

"(2)   The act challenged by the party is capable of repetition, or the policy or practice challenged by the party continues in effect; and

"(3)   The challenged policy or practice, or similar acts, are likely to evade judicial review in the future."

Thus, under the terms of ORS 14.175, a party may maintain, and a court may decide, an action challenging a policy or practice of a public body, notwithstanding that the policy or practice may no longer have a practical effect on the party, if the three requirements set out in subparagraphs (1) through (3) are met. *Krisor v. Henry*, 256 Or App 56, 60, 300 P3d 199, *rev den*, 353 Or 787 (2013).

In supplemental briefing, the parties take opposing positions on whether ORS 14.175 applies to this case. Petitioner contends that this case meets all of the ORS 14.175 requirements, including that DMAP's denial of transportation to a medical appointment, "the specific act, policy or practice giving rise to the action," is capable of repetition in the future and that such denials are likely to evade review. In contrast to its argument in its motion to dismiss for mootness, DMAP asserts that ORS 14.175 does not apply and does so in a way that suggests that this case is not and never was moot. As explained below, we conclude that each of the requirements of ORS 14.175 is met in this case.

Without dispute, several of ORS 14.175's requirements are met. First, DMAP does not dispute that it is a public body as defined in ORS 174.109 (with exceptions not relevant here, "as used in the statutes of this state 'public body' means state government bodies, local government bodies and special government bodies"). Accordingly, ORS 14.175 applies to the acts, policies, and practices of DMAP and TransLink, its agent. In addition, DMAP does not dispute that petitioner had standing to commence the action, as described in ORS 14.175(1). "Standing" is a term of art that is "used to describe when a party possesses a status or qualification necessary for the assertion, enforcement,

or adjudication of legal rights or duties." *Morgan v. Sisters School District #6*, 353 Or 189, 194, 301 P3d 419 (2013) (internal quotations omitted). "Standing deals with *who* can bring a controversy before the court." *Couey v. Brown*, 257 Or App 434, 438, 306 P3d 778 (2013), *rev'd on other grounds, Couey v. Atkins*, 357 Or 460, 355 P3d 866 (2015) (emphasis in original).

What DMAP disputes are the requirements in ORS 14.175(2) (the challenged act giving rise to the action is "capable of repetition" or the policy or practice giving rise to the action "continues in effect") and ORS 14.175(3) (the challenged act, policy, or practice is likely to evade future judicial review). DMAP asserts in its supplemental brief that we should consider the relevant action, policy, or practice to be "the agency's denial of petitioner's late hearing request" and then consider whether that conduct is "capable of repetition but evades review." On that score, DMAP concludes that any denial of a hearing is fact-specific, so petitioner cannot establish that hearing denials are capable of repetition or will evade review in the future.

We conclude that DMAP's argument lacks merit. First, DMAP does not take into account that, by its own terms, ORS 14.175 applies when the case is moot, that is, when the "specific act, policy or practice giving rise to the action no longer has a practical effect on the party." *See also Couey*, 357 Or at 462 (describing the issues presented as including whether, "if the action is moot," it is "nevertheless justiciable under ORS 14.175 because it is likely to evade review"). DMAP's current argument amounts to an about-face on the question of mootness.

Specifically, DMAP contended in its motion to dismiss that the relevant facts for mootness were (1) "the denial of petitioner's request for medical transportation to Curry General Hospital on a single date in October 2012" to "obtain medical authorization for a replacement wheelchair" and (2) "during the pendency of this proceeding," petitioner's receipt of a replacement wheelchair, so that "he no longer requires transportation to Curry General Hospital for that purpose." DMAP argued that, even if we were to agree that petitioner was entitled to a hearing, such "a hearing on the

merits of the lack-of-transportation claim would have no practical effect, because petitioner sought transportation on a single occasion to Curry General Hospital in order to obtain medical authorization for a replacement wheelchair, and that wheelchair has already been received." Thus, DMAP urged us to dismiss petitioner's appeal as moot.

Now, in contrast, DMAP asserts that the action actually arose out of DMAP's denial of petitioner's hearing request. In other words, DMAP suggests that we should not look to the practical effect of a decision concerning petitioner's hearing request in his administrative challenge to TransLink's conduct. If that were so, then the case is not moot, because petitioner's hearing request is a disputed issue that has yet to be finally resolved and that might result in petitioner receiving a hearing to challenge the earlier transportation denial. But given that petitioner's need for transportation for a replacement wheelchair has been resolved and, in the absence of a current request or need for medical transportation, the case is moot. *See Couey*, 357 Or at 469-71 (explaining that a case is moot if the complainant does not retain a concrete stake in the outcome, or there is no actual controversy based on present facts, and holding that the plaintiff was not currently harmed or under current threat of harm by the election law that he sought to challenge).

Petitioner in this action ultimately seeks to challenge the denial of medical transportation by DMAP's transportation provider, TransLink, without any medical basis. That is what gave rise to the action for purposes of ORS 14.175. As petitioner puts it, he "seeks to restrain and or prevent future and present harm from laymen employees of respondent(s) interfering with needed medical appointments." He contends that the "issue raised by petitioner has not been addressed or corrected by respondent(s) or their contractor(s), pertaining to verifying and authorizing medical appointments made by physicians or their staff." Petitioner points out that, as a recipient of health care coverage through the Oregon Health Plan and a wheelchair user who needs medical transportation, he remains in an ongoing relationship with DMAP and TransLink and that

similar service denials are capable of repetition. For its part, DMAP does not argue that it has changed the "act, policy, or practice" that petitioner seeks to challenge and does not controvert that petitioner continues in his relationship with DMAP and TransLink. Hence, the challenged act giving rise to the action is "capable of repetition" or the policy or practice giving rise to the action "continues in effect" as required in ORS 14.175(2).

Last, the challenged act, policy, or practice is likely to evade future judicial review, as required by ORS 14.175(3). That criterion is met in this case, because of the nature of the benefit ultimately at issue. Petitioner uses medical transportation for necessary medical care. As petitioner argues, he is not going to delay necessary medical care for many months, or even a year or more, just so that he can maintain a legal challenge to what is, in his view, an arbitrary denial of medical transportation. Thus, any particular case of a denial of medical transportation for petitioner will very likely evade review.

Accordingly, ORS 14.175 applies, and under its terms, petitioner's case is justiciable. ORS 14.175 (providing that we "may issue a judgment on the validity of the challenged act, policy or practice even though the specific act, policy or practice giving rise to the action no longer has a practical effect on the party"). We exercise our discretion to adjudicate petitioner's challenge on its merits, bearing in mind the ongoing relationship between the parties and petitioner's need for the medical transportation service ultimately at issue.

C.  *The Merits of Petitioner's Late Hearing Request*

Accordingly, we turn to the merits of the controversy at hand. Petitioner argues that he had good cause for the untimely submission of his hearing request because of circumstances beyond his control, namely, TransLink's delayed delivery of the action notice, which he was told was required to file his hearing request.[2] As noted earlier, petitioner

_____

[2] As noted above, the record contradicts the state's contention that petitioner failed to alert DMAP that TransLink sent the notice denying services to an incorrect address.

contends that he waited for "a week or so" for the notice to arrive and then contacted TransLink to request that it send the notice to him, apparently resulting in at least a week of delay in petitioner's receipt of the action notice needed to request a hearing. Petitioner also contends that, at least, he was entitled to a hearing concerning the facts leading to his late hearing request.

DMAP cites the applicable rule governing requests for contested case hearings, OAR 410-120-1860. Section 4 of the then-effective version of OAR 410-120-1860 provided, in relevant part:

"(a)   A client has the right to a contested case hearing in the following situations upon the timely completion of a request for a hearing:

"* * * * *

"(b)   To be timely, a request for a hearing is complete when the Division receives the Authority's Administrative Hearing request form (DMAP 443) not later than the 45th day following the date of the decision notice;

"(c)   In the event a request for hearing is not timely, the Division will determine whether the failure to timely file the hearing request was caused by circumstances beyond the control of the client and enter an order accordingly. In determining whether to accept a late hearing request, the Division requires the request to be supported by a written statement that explains why the request for hearing is late. The Division may conduct such further inquiry as the Division deems appropriate. *In determining timeliness of filing a hearing request, the amount of time that the Division determines accounts for circumstances beyond the control of the client is not counted. The Division may refer an untimely request to the Office of Administrative Hearings for a hearing on the question of timeliness.*"

(Emphasis added.) Thus, when a client's request for a contested case hearing is received more than 45 days after the date of a decision notice, DMAP's rule requires a client to submit a written statement to DMAP explaining why the request is late, DMAP determines whether the failure to timely file was caused by circumstances beyond the client's control, and DMAP excludes from the delay the amount of

time that it determines accounts for circumstances beyond the client's control.

Petitioner submitted a written statement in accordance with OAR 410-120-1860. DMAP's ensuing order, however, was legally insufficient.

The findings in an administrative order must be supported by substantial evidence, and the order must demonstrate substantial reason, that is, the reasoning leading from the facts found to the conclusions drawn. *Drew v. PSRB*, 322 Or 491, 499-500, 909 P2d 1211 (1996). As the Supreme Court has explained,

> "[t]he substantial evidence rule is a safeguard for anyone faced with the possibility of adverse consequences from a decision of an administrative agency. The rule loses its meaning if it is interpreted as leaving to the internal 'expertise' of agency personnel, rather than to the external scrutiny of appellate courts, the critical question whether the facts of the case permit the administrative choice involved."

*Id.* at 499. Under the substantial reason rule, an administrative agency must state its factual findings and articulate "'a rational connection between the facts it finds and the legal conclusions it draws from them.'" *Id.* at 500 (quoting with approval *Williams v. SAIF*, 310 Or 320, 329, 797 P2d 1036 (1990) (Unis, J., specially concurring)).

In this case, DMAP did not make any findings concerning the delay involving TransLink's failure to promptly send the action notice to petitioner at his correct mailing address. Nor did DMAP address whether any such delay constituted "circumstances beyond the control of the client" and subtract any such qualifying delay from the 50 days it took for DMAP to receive petitioner's hearing request. Instead, DMAP issued the following conclusion: "your letter did not describe circumstances beyond your control." We readily conclude that DMAP's "Late Filing" order lacks substantial reason.

We also reject DMAP's argument that petitioner invited error and so cannot now demand the opportunity to challenge TransLink's denial of services. *See Hatley v. Umatilla County*, 256 Or App 91, 112, 301 P3d 920, *rev den*,

353 Or 867 (2013) (doctrine of "invited error" applies in administrative proceedings). Under the "invited error" doctrine, a party who was actively instrumental in bringing about an error cannot assert that the error provides a ground for reversal. *Id.*

DMAP argues that petitioner invited error because he agreed "to dismissal of his request for reconsideration," an agreement that petitioner denies ever making. DMAP relies solely on its own statement in the order denying reconsideration: "the DMAP Hearing Representative and [petitioner] agreed that although his reconsideration request would be denied, a conversation with TransLink and response to his questions in his February 14, 2013 letter will be addressed separately." DMAP's argument, though, fails for a number of reasons. First, the reconsideration order was surplusage because it was issued more than 60 days after petitioner sought reconsideration. Second, we do not read the statement as an agreement by petitioner that DMAP should deny reconsideration, as DMAP urges. It instead appears, as petitioner asserts, to be DMAP's accommodation in light of its denial of a contested case hearing (according to petitioner, an accommodation that never materialized). Third, nothing else in the record indicates that petitioner invited DMAP to deny him a contested case hearing to challenge TransLink's action.

We accordingly reverse DMAP's order and remand for reconsideration. Because of that disposition, we do not reach petitioner's contention that DMAP erroneously failed to refer the dispute concerning the timeliness of his hearing request to the Office of Administrative Hearings.

Reversed and remanded.