GARRETT, J.
*671 Petitioner seeks review of a final order of the Division of Medical Assistance Programs *408 (DMAP), a division of the Oregon Health Authority, cancelling a contested case hearing regarding DMAP's denial of her request for prior authorization of an out-of-hospital birth. We conclude that DMAP's order cancelling the contested case hearing lacks substantial reason. See Hooper v. Division of Medical Assistance Programs , 273 Or. App. 73, 86, 356 P.3d 666 (2015) (a final administrative order "must demonstrate substantial reason, that is, the reasoning leading from the facts found to the conclusions drawn" (citing Drew v. PSRB , 322 Or. 491, 499-500, 909 P.2d 1211 (1996) )). Accordingly, we reverse and remand.
The facts pertinent to our resolution are not in dispute. Petitioner, who was covered by the Oregon Health Plan (OHP), became pregnant. She decided to have her baby delivered outside of a hospital setting, at the Klamath Women's Clinic birth center, by a nurse-midwife who was not enrolled as a provider in petitioner's coordinated care organization. Petitioner planned to give birth vaginally, despite having previously given birth via caesarean section (C-section). Petitioner submitted a prior-authorization request for a "vaginal birth after caesarean" (VBAC) to DMAP, which denied petitioner's request, stating that a "previous C-section is an automatic high-risk exclusion" for an out-of-hospital birth and that petitioner's provider had not submitted a "plan of care" addressing petitioner's particular needs in light of her previous C-section. Petitioner obtained private insurance to cover the costs of her out-of-hospital birth.
Petitioner sought to appeal the denial of coverage and requested a hearing for review of DMAP's denial of her prior-authorization request. DMAP referred the matter to the Office of Administrative Hearings (OAH) for a contested case hearing. While the matter was pending before OAH, petitioner gave birth to her child. DMAP then cancelled the contested case hearing, leading to this petition for judicial review.
In her first assignment of error, petitioner challenges DMAP's cancellation of the contested case hearing.
*672 Petitioner's second, third, and fourth assignments of error address the substantive merits of DMAP's denial of petitioner's prior-authorization request. As explained below, we agree with petitioner that DMAP's order canceling the contested hearing lacks substantial reason, and we reverse and remand for that reason. We decline to address petitioner's remaining assignments of error, as one possible outcome on remand is a contested case hearing at which the merits of DMAP's denial of the prior-authorization request may be addressed in the first instance. Accordingly, our discussion that follows is limited to the narrow procedural issues concerning the cancellation of the hearing.
Petitioner's baby was due in March 2016. On February 6, petitioner received DMAP's letter denying her request for coverage for an out-of-hospital birth, dated January 28. Petitioner promptly sought review in a contested case hearing, and requested expedited consideration under former OAR 410-141-0265 (Oct. 31, 2013). On March 7, DMAP denied the request for an expedited hearing, and scheduled the matter for hearing before an administrative law judge on May 2, 2016. On March 19, petitioner gave birth at the birth center. The costs associated with the birth were paid by the private insurance that petitioner had obtained.
On April 28, 2016, petitioner submitted her hearing memorandum and related materials for the contested case hearing scheduled for May 2. Later that same day, petitioner received a letter from a DMAP official, Niño, stating that DMAP had cancelled the hearing and withdrawn the case from OAH pursuant to OAR 137-003-0515(4)(b) (providing that an agency may withdraw a case before hearing if "[a]ll of the issues in the case have been resolved without the need to hold a hearing"). By way of explanation for the cancellation and withdrawal, DMAP's letter stated:
"OHA has contacted the office of Klamath Women's Clinic Birth Center to establish whether or not a valid 'OHP Client Agreement to Pay for Health Services' form had been signed. April at Klamath Women's Clinic Birth Center confirmed that you did not sign this form. As a result, you cannot be billed for the above mentioned service (OAR) 410-120-1280(3)(h).
*409 *673 "This case has been dismissed from the Office of Administrative Hearings ( OAR 137-003-0515(4)(b) ) as the issue described by your Administrative Hearing Request is no longer hearable.
"If you should receive a bill for services, please contact OHA Client Services ***."
On judicial review, the parties appear to agree as to the meaning of that letter. DMAP apparently determined that petitioner could not be personally billed by the birth center for the costs associated with the childbirth because petitioner had not signed a particular form that is required in order for OHP patients to be charged for services. See OAR 410-120-1280(3)(h) (requiring that, before a provider may bill a person enrolled in OHP for a noncovered service, and before providing that service, "the client must sign the provider-completed Agreement to Pay (OHP 3165)"). Because petitioner could not be personally billed by the birth center for birth services, DMAP then determined that the "issue" for which petitioner had requested a hearing was "no longer hearable." According to the petitioner, the problem with DMAP's reasoning is that under ORS 414.635(3), persons covered by OHP "have the right to appeal decisions about care and services through the [A]uthority in an expedited manner and in accordance with the contested case procedures in ORS chapter 183." Thus, according to petitioner, when DMAP denied her request for prior authorization of the out-of-hospital birth, petitioner was statutorily entitled to a hearing on the propriety of that denial regardless of whether she could be personally billed for the medical services that she had received.
Following oral argument, we requested that petitioner submit a memorandum identifying any financial injury for which she seeks redress, or, in the alternative, if there is no such injury, the nonspeculative, practical effect of a decision from this court that the cancellation of the hearing was improper. In a supplemental memorandum, petitioner stated that she had "borrow[ed]" $375 from family members to pay the premium for the private insurance she obtained, but she did not state that she is seeking reimbursement from DMAP for that expense or any other medical expense. She described her "primary financial injury" as "the cost *674 of attempting to exercise her rights *** through this legal action"-in other words, "the opportunity to recoup the legal fees for exercising her statutory rights" under ORS 183.497. We understand petitioner's cryptic response to mean, therefore, that she is seeking compensation only for attorney fees and costs. In her briefing, except for entitlement to a contested hearing, petitioner does not point to any other nonspeculative effect that reversal of DMAP's order would have on her rights at present. Accordingly, as explained below, we conclude that the petition for review is moot.
An action is moot if resolution thereof " 'no longer will have a practical effect on or concerning the rights of the parties.' " Eastern Oregon Mining Association v. DEQ , 360 Or. 10, 15, 376 P.3d 288 (2016) (quoting Brumnett v. PSRB , 315 Or. 402, 406, 848 P.2d 1194 (1993) ). In determining whether resolution of the petition for review will have a "practical effect" on or concerning petitioner's rights, our decision in Hooper is illustrative. In that case, the petitioner, who was covered by OHP, sought review of an order denying his request for a hearing after he was denied coverage for transportation to obtain a replacement wheelchair. 273 Or. App. at 75-76, 356 P.3d 666. The petitioner, who relied on a wheelchair for mobility, argued that, although he had already obtained a replacement wheelchair and no longer needed transportation for that purpose, the case was not moot "given his ongoing medical transportation needs and his ongoing relationship with DMAP and [the transportation provider]." Id. at 79, 356 P.3d 666. We concluded that the case was moot despite the fact that the "petitioner's hearing request is a disputed issue that has yet to be finally resolved and that might result in petitioner receiving a hearing to challenge the earlier transportation denial." Id. at 83, 356 P.3d 666. We so concluded because the "petitioner's need for transportation for a replacement wheelchair has been resolved," and the petitioner did not have a "current request or *410 need for medical transportation." Id.[1] *675 In this case, as far as we can determine, petitioner is not seeking reimbursement for her private-insurance expenses or any other injury suffered as a result of DMAP's denial of prior authorization except for attorney fees and costs that she incurred in challenging that denial.[2] She has already given birth, and, therefore, her need for OHP coverage for that particular birth "has been resolved." Cf. id. Although petitioner stated in an affidavit that she and her husband plan to have more children, there is no indication that she has a "current request or need" for birth services. Cf. id. Thus, as in Hooper , because conducting a hearing would no longer have any effect on where and how petitioner would receive birth services covered by OHP, the fact that her entitlement to a hearing has not been resolved does not prevent the action from being moot. In addition, because petitioner has not yet been awarded attorney fees, the fact that she may be awarded them in this court is not sufficient to render the case not moot. See Keeney v. University of Oregon , 178 Or. App. 198, 205-06, 36 P.3d 982 (2001), rev. den. , 334 Or. 327, 52 P.3d 435 (2002) ("[P]etitioner's asserted interest in attorney fee[s] is inchoate, depending on the possibility that he might prevail on the merits on judicial review. That possibility, without more, is insufficient to render this case justiciable.").
Although we conclude that the action is moot, we nevertheless conclude that it is justiciable under ORS 14.175. Under ORS 14.175, we may consider the merits of an otherwise moot challenge to "an act, policy[,] or practice of a public body" if we determine that the following requirements are satisfied:
"(1) The party had standing to commence the action;
"(2) The act challenged by the party is capable of repetition, or the policy or practice challenged by the party continues in effect; and
"(3) The challenged policy or practice, or similar acts, are likely to evade judicial review in the future."
*676 Petitioner argues that a future challenge to a denial of prior authorization for birth services is capable of repetition and likely to evade judicial review based on the ephemeral nature of pregnancy and the fact that a pregnant person cannot delay necessary medical care in order to maintain a legal challenge.
With respect to the first requirement, DMAP does not dispute that petitioner had standing to challenge the denial of prior authorization for an out-of-hospital VBAC, nor do we have any reason to conclude that she did not. Nor, as to the second requirement, does DMAP appear to dispute that, based on the unique nature of pregnancy, a legal challenge to the denial of coverage for birth services is "capable of repetition" within the meaning of ORS 14.175(2). See generally Roe v. Wade , 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) ("Pregnancy provides a classic justification for a conclusion of nonmootness. It truly could be capable of repetition, yet evading review." (Internal quotation marks omitted.)).
DMAP argues, however, that DMAP's "den[ial] of prior authorization of an out-of-hospital birth" is "not likely to repeat and evade review" for petitioner. In essence, DMAP argues that a future denial of prior authorization for an out-of-hospital birth is unlikely to evade review because petitioner could prevent the matter from becoming moot by signing an "Agreement to Pay" form in which petitioner would consent to pay for any birth services not covered by OHP under OAR 410-120-1280(3)(h). The problem with DMAP's argument is that it presupposes that the absence of an "Agreement to Pay" would *411 prevent petitioner from being harmed in any way by a wrongful denial of prior authorization for birth services. The correctness of that assumption is not self-evident; indeed, as petitioner's situation makes clear, a person denied OHP coverage may incur expenses other than those owed to the medical provider, such as private insurance premiums.
DMAP also argues that petitioner's case is not justiciable because certain relevant circumstances may change in the future. For one, DMAP argues that, due to petitioner's successful VBAC at the birth center, she may *677 no longer be considered "high risk" for a future VBAC and therefore would not necessarily be denied prior authorization for an out-of-hospital birth. In addition, DMAP argues that the regulations applicable to petitioner's 2016 birth may change in the future and, therefore, would not apply to a future birth. DMAP's speculation about what may happen is beside the point. In light of DMAP's statement to petitioner that DMAP essentially considers a VBAC to be a categorically "high risk" delivery-i.e. , "an automatic high-risk exclusion"-it is sufficiently likely that DMAP would deny authorization for any future VBAC for petitioner in an out-of-hospital setting. The fact that applicable regulations may change at some point in the future is too speculative to undermine that conclusion. Instead, based on petitioner's submissions and the absence of any present indication that DMAP would make a different coverage decision for petitioner for a future pregnancy, we conclude that petitioner has established a reasonable expectation that the challenged act will recur. See Progressive Party of Oregon v. Atkins, 276 Or. App. 700, 711, 370 P.3d 506, rev. den. , 360 Or. 697, 388 P.3d 713 (2016) ("[A]n act will be deemed 'capable of repetition' only if there is a 'reasonable expectation' or a 'demonstrated probability' that the challenged act, or a similar act, will recur." (Quoting Federal Election Commission v. Wisconsin Right to Life, Inc. , 551 U.S. 449, 463, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007).)). Accordingly, we conclude that DMAP's act of denying prior authorization for an out-of-hospital VBAC for petitioner is "capable of repetition" and "likely to evade judicial review in the future" within the meaning of ORS 14.175, and we exercise our discretion to reach the merits of petitioner's first assignment of error.
With respect to petitioner's arguments on the merits, the issue reduces to whether the fact that petitioner did not sign an "Agreement to Pay" form-and, according to DMAP, could not be personally billed by the birth center-"resolve[s]" the issues for which petitioner requested a hearing within the meaning of OAR 137-003-0515(4)(b). We conclude that the question of whether DMAP acted appropriately in cancelling the hearing is one that we cannot answer on the basis of the explanation provided in the April 28 letter, and that that letter (the final order, for *678 purposes of judicial review) therefore lacks substantial reason. See Hooper , 273 Or. App. at 86, 356 P.3d 666 ("Under the substantial reason rule, an administrative agency must state its factual findings and articulate 'a rational connection between the facts it finds and the legal conclusions it draws from them.' " (Quoting Drew , 322 Or. at 500, 909 P.2d 1211.)).
The only reason cited in DMAP's April 28 letter for canceling the hearing and deeming the matters in dispute "resolved" is the fact that petitioner could not be personally billed by the birth center. But it is not self-evident that, just because petitioner could not be directly billed by the provider, all of the issues raised in petitioner's request for a contested case hearing were resolved. Petitioner did not limit her hearing request to the issue of whether she might be entitled to a financial remedy as a result of the denial of coverage. Rather, petitioner's hearing request focused on the propriety and lawfulness of DMAP's denial of coverage itself. That question is unrelated to whether she was to be directly billed by the birth center for noncovered services. Thus, DMAP's letter canceling the hearing does not explain why, simply because petitioner could not be directly billed, the hearable issues as she has articulated them have been resolved. See Kay v. Employment Dept. , 284 Or. App. 167, 175, 391 P.3d 969 (2017) (concluding that an agency's decision lacked substantial reason because it failed to address considerations presented by the record that were relevant to resolution of the dispute before it).
*412 We express no view at this time as to whether petitioner is, in fact, entitled to a hearing. However, on remand, if DMAP adheres to its determination that "[a]ll of the issues in the case have been resolved without the need to hold a hearing," OAR 137-003-0515(4)(b), DMAP must explain that determination in a manner that permits meaningful judicial review, see Drew , 322 Or. at 500-01, 909 P.2d 1211 (listing the "practical reasons" for the substantial-reason requirement, including to "facilitate[ ] meaningful judicial review" (internal quotation marks omitted)).
Reversed and remanded.

It also appears that the petitioner was not seeking reimbursement for any expenses that he incurred as a result of the denial of coverage. See Hooper , 273 Or. App. at 77-78, 356 P.3d 666 (quoting letter from DMAP's final order, which reasons that, " 'because the issue for which petitioner requested an Administrative Hearing cannot be provided (cannot go back and provide transportation) and did not involve reimbursement,' " petitioner's request for reconsideration was dismissed (brackets omitted)).

Despite multiple opportunities to do so, petitioner has never affirmatively stated that she is seeking reimbursement for any private insurance premiums, deductibles, or any other expense.