No. 361          May 6, 2026          211

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Erin HAUGEN,
*Petitioner,*

*v.*

OREGON HEALTH AUTHORITY,
*Respondent.*

Office of Administrative Hearings
2020OHA12150;
A175820 (Control)

April NORVELL,
*Petitioner,*

*v.*

OREGON HEALTH AUTHORITY,
*Respondent.*

Office of Administrative Hearings
2020OHA11944;
A175968

Argued and submitted March 22, 2024.

Hermine Hayes-Klein and Hayes Klein Law, LLC, filed the briefs for petitioners.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Emily N. Snook, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Lagesen, Chief Judge, and Pagán, Judge.*

LAGESEN, C. J.

Reversed and remanded.

_____
   * Lagesen, C. J., *vice* Mooney, S. J.

### LAGESEN, C. J.

Petitioners seek judicial review of final orders of the Oregon Health Authority (OHA) denying their prior authorization requests for coverage under the Oregon Health Plan (OHP), Oregon's Medicaid plan, for maternal health services at a licensed freestanding birth center (FBC). They seek a determination that the rules that OHA applied to deny their prior authorization requests are invalid and request that we modify the final orders to direct OHA to pay for the services they received, award costs resulting from the denials, and award attorney's fees and costs. Although, as we explain, this proceeding is moot, some of petitioners' contentions are ones that are capable of repetition yet evading review, and we exercise our discretion under ORS 14.175 to address them. As we explain, we reject petitioners' contentions that the challenged rules on their face conflict with federal Medicaid requirements to the extent the rules exclude from coverage birth services at FBCs to OHP members who have had prior caesarean sections. Petitioners' remaining challenges, which assert that the preauthorization requirements imposed by the challenged regulations are so burdensome that they effectively deprive plan members of covered services, require development of a factual record to resolve. Because the agency failed to develop a factual record, based on its erroneous conclusion that administrative rules cannot be challenged in contested case proceedings, we remand to OHA to address the balance of petitioners' challenges in the first instance, as required by ORS 183.482(8)(a).

## I.   BACKGROUND

At issue in this case (besides the procedural snags) is whether OHA's rules implementing OHP conflict with federal Medicaid requirements with respect to the provision of services at FBCs. To provide context, we first provide an overview of the regulatory environment: Medicaid, Oregon's implementation of it through OHP, the services that FBCs can provide in view of applicable state licensing requirements, and the rules governing OHP coverage of services at FBCs. We then set forth the facts regarding OHA's denials of petitioners' requests for prior authorization to obtain services at an FBC.

A.   *Regulatory Background*

OHA administers OHP, Oregon's Medicaid health plan, which provides health care assistance to certain qualifying low-income residents. ORS 413.032(1)(i). To receive federal funds to operate OHP, Oregon must fulfill a variety of federal requirements. 42 USC § 1396a; *Harris v. McRae*, 448 US 297, 301, 100 S Ct 2671, 65 L Ed 2d 784 (1980) (states participating in Medicaid "must comply with [the Medicaid Act's] requirements" or risk losing Medicaid funding). In crafting its Medicaid system, a "[s]tate plan for medical assistance must *** include reasonable standards *** for determining eligibility for and the extent of medical assistance under the plan," which are "consistent with the objectives of" the Act. 42 USC § 1396a(a)(17). The state Medicaid agency "may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures." 42 CFR § 440.230(d). Generally, those statutes "confer[] broad discretion on the States to adopt standards for determining the extent of medical assistance, requiring only that such standards be 'reasonable' and 'consistent with the objectives' of the Act." *Beal v. Doe*, 432 US 438, 444, 97 S Ct 2366, 53 L Ed 2d 464 (1977).

Pregnant residents below a specified income level are deemed "categorically needy" beneficiaries, and OHA must provide coverage for certain categories of services to categorically needy beneficiaries to receive federal Medicaid funds.[1] 42 USC § 1396d(a)(viii); 42 CFR § 440.210(a)(2) ("Required services for the categorically needy" include pregnancy-related services). One such mandatory category is maternity services performed at a licensed FBC, if the state licenses such facilities. 42 USC § 1396a(a)(10)(A)(i)(III); 42 USC § 1396d(a)(28). States are not required to license FBCs, but if a state does so, the state must cover those services under Medicaid for categorically needy beneficiaries. *See* 42 USC § 1396d(l)(3)(B)(iii)-(iv) (defining "freestanding birth center" as a health facility that is licensed and regulated by state law).

---

[1] Currently, Oregon offers its Medicaid program under a waiver which provides exceptions to the federal Medicaid requirements. Those exceptions are not applicable to the circumstances of this case.

Oregon licenses FBCs. OHA is responsible for that licensing program, including adopting rules to establish "[s]tandards for patient care and safety, adequate professional staff organizations, training of staff for whom no other state regulation exists, suitable delineation of professional privileges and adequate staff analyses of clinical records." ORS 441.025(9); *see* ORS 442.015(12)(a)(D) (an FBC is a "health care facility"); ORS 441.015(1) ("health care facilities" must be licensed); ORS 441.020(1) ("health care facilities" must obtain that license from OHA). The rules that "establish standards for the licensure of freestanding birthing centers to ensure the health and safety of individuals who receive services from these centers" are provided in OAR chapter 333, division 77. OAR 333-077-0000(1). Oregon licenses FBCs "for the primary purpose of performing low risk deliveries * * * following normal, uncomplicated pregnancy." OAR 333-077-0010(11). To determine whether a delivery is "low risk," and therefore permitted to receive services under the FBC's license, a provider must assess the client's risk status throughout their treatment. OAR 333-077-0125(2). To assess the client's risk status, the provider must consult "tables" provided in the licensing rules. *Id.* The "tables" include criteria—primarily historical medical conditions associated with prior pregnancies and conditions present during the current pregnancy—that exclude a pregnancy from being "low risk" and therefore eligible for services at the FBC under its license.[2] *Id.* If a client meets any of the exclusion criteria, the FBC cannot, consistent with its license, provide delivery services to the client and must transfer the client to hospital-based-care. OAR 333-077-0125(4). The licensing rules specify further that they do not govern Medicaid-related decisions: "[t]hese rules do not apply to decisions regarding eligibility, prior authorization, coverage determination, or payment from Medicaid, Medicare, or other reimbursement for care provided at a birthing center." OAR 333-077-0125(8).

Although the licensing rules do not govern Medicaid-related decisions regarding services at FBCs, in its capacity as OHP administrator, OHA has promulgated rules governing

---

[2] Moving forward, we refer to the tables referenced in OAR 333-077-0125 as the "licensing criteria."

OHP coverage of and payment for FBC services. Those rules apply when an FBC provides care to a pregnant individual who receives health insurance through OHP and intends to receive reimbursement from OHP for the services. Under OAR 410-130-0200, OHA will pay for FBC services provided to OHP members only if the FBC obtains prior authorization from OHA to perform the services. The prior authorization requirements include a variety of forms, documentation, and test results that must be received by OHA no later than a specific timeframe into gestation. OAR 410-130-0200(5). The temporary rule under which petitioners' requests were denied required that the documentation be received by OHA on or before 34 weeks' gestation. *Temporary* OAR 410-130-0200(5) (Mar 23, 2020). Currently, the rule requires that documentation must be received by 38 weeks' gestation. OAR 410-130-0200(5)(a). The rules instruct providers to consult a "Planned Community Births (Out-of-Hospital Births) Prior Authorization and Billing Guide," that is published by OHA and includes detailed information about enrolling as a Medicaid provider, requesting prior authorization, documenting a patient's risk level and medically appropriate care, and billing OHA for services. OAR 410-130-0200(5).

OAR 410-130-0240 provides additional requirements for FBCs to receive payment under OHP for maternity and delivery care provided to OHP members. OAR 410-130-0240(4)(b), like the FBC licensing requirements, requires that a pregnancy be "low risk," and states that OHA "may only consider payment" for services if the pregnancy is low risk. It provides that OHA "will determine whether a pregnancy can be considered low risk and an out-of-hospital birth is eligible for payment[.]" *Id*.

Initially, the definition of "low risk" for purposes of OHP was the same as the definition of "low risk" for purposes of the FBC licensing requirements. From 2016 to 2020, to determine whether a pregnancy was low risk, the rules directed OHA to consult the FBC licensing criteria outlining risk factors, just like an FBC would do to determine pregnancy risk status and whether it could provide services within the scope of its license. *See* OAR 410-130-0240(4)(c) (Jan 1, 2015) ("The Division adopts Table I

from [*former*] OAR 333-076-0650 to outline the absolute risk factors that, if present, would preclude payment for initiation or continuation of any out-of-hospital labor and delivery care.")[3]; *former* OAR 333-076-0650(1) (Jun 27, 2006) ("Procedures permitted, including surgical procedures, must be limited to those directly pertaining to pregnancy, labor and delivery care of women experiencing low risk pregnancy. Procedures performed will be consistent with the individual practitioner's licensure and/or scope of practice. *** Table I outlines absolute risk factors that, if present on admission to the birthing center for labor and delivery, would prohibit admission to the birthing center. Table II outlines absolute risk factors that, if they develop during labor and delivery, require transfer of the client to a higher level of care. Table III outlines absolute risk factors that, if they develop during the postpartum period in the mother or infant, would require transfer to a higher level of care.").

In 2020, OHA revised OAR 410-130-0240 to establish a different definition of "low risk" than that contained in the licensing rules. The revised rule did not instruct OHA to rely on the licensing criteria to determine risk status. Instead, it provided new, different criteria in the form of separate tables.[4] *Temporary* OAR 410-130-0240 (Apr 1, 2020). Pertinent to this case, the licensing criteria and the OHP criteria differ in how they classify a prior cesarean section as a risk factor. Under the OHP criteria, if a patient has ever had a cesarean section in a previous birth, that patient is categorically not "low risk" and, therefore, OHA will not reimburse an FBC for services provided to that patient. OAR 410-130-0240, Attachment Table 410-130-0240-1. Under the licensing criteria, however, a prior cesarean section does not, standing alone, result in a determination that a pregnancy is high risk. Instead, to exclude a patient from low-risk status, the prior cesarian must have involved one or more identified complications, such as a "classical incision," postoperative infection, diabetes, or steroid use. OAR 333-077-0125, Attachment Table I.

---

[3] *Former* OAR 333-076-0650 was renumbered to OAR 333-077-0125 in 2025.

[4] Moving forward, we refer to the tables referenced in OAR 410-130-0240 as the "OHP criteria."

B.  *Factual Background*

Petitioners, who received healthcare coverage from OHP, became pregnant and were due to give birth during the COVID-19 pandemic. At the beginning of the pandemic, in response to the Governor's executive order declaring an emergency, OHA adopted temporary rules. The stated purpose of those rules was to improve access to health care outside of the hospital setting and included the two rules challenged by petitioners. Those rules addressed eligibility for out of hospital birth (OOHB) services. *Temporary* OAR 410-130-0200 (Mar 23, 2020) required OHP members to obtain prior authorization for OOHB services and to submit "initial documentation adequate to assess pregnancy risk per OAR 410-130-0240" on or before 34 weeks gestation. *Temporary* OAR 410-130-0240 (Apr 1, 2020) adopted tables that set out criteria for determining pregnancy risk for the purpose of assessing whether OHA would pay for OOHB services under OHP. OHA's communication about the rule changes explained that they were intended to increase access to OOHB services to reduce strain on the hospitals and reduce the patient and infant's risk of exposure to COVID-19.

After each of the rules had been promulgated, each petitioner requested prior authorization from OHA for OOHB services at Andaluz Waterbirth Center, an FBC. OHA denied authorization for each. Petitioner Haugen's request was denied because she had had a prior cesarean section, refused standard testing for gestational diabetes, and refused prenatal RhoGAM testing. Petitioner Norvell's request was denied because the request was untimely—received at 38 weeks and six days gestation despite a deadline of 34 weeks—it was missing documentation, and she had refused standard testing for gestational diabetes.

Petitioners requested contested case hearings in accordance with ORS 183.415(2) to challenge the denials. Before the hearings, petitioners gave birth at Andaluz Waterbirth Center.

In their contested case proceedings, petitioners alleged that the administrative rules on which OHA based the denials were invalid for range of reasons. They argued

that the rules restricted access to OOHB services in violation of federal and state law. The administrative law judge (ALJ) refused to consider those challenges, determining that a petitioner could not challenge an administrative rule in a contested case hearing. Thus, the ALJ proceeded to apply the rules as written to petitioners' circumstances, determined that petitioners did not meet the requirements for prior authorization, concluded that OHA properly followed the existing rules in denying authorization, and affirmed the denials. OHA adopted the ALJ's proposed orders without modification, and petitioners timely sought judicial review.

On judicial review, petitioners maintain their challenges to the rules, asserting that the rules violate federal and state law and exceed OHA's authority. Petitioners also argue that the ALJ erred in ruling that their challenges to the rules were outside the scope of a contested case hearing, thereby preventing them from developing a full record for review. OHA responds that the cases are moot because petitioners have already given birth and cannot be personally billed for the services. In addition, OHA points out the temporary rules that petitioners challenge have been superseded, something that ordinarily moots a challenge to a rule. As to the merits, OHA defends the determination that petitioners' rule challenges were outside the scope of a contested case proceeding and argues further that its rules comport with applicable federal and state law.

## II.   ANALYSIS

A.  *Mootness*

We begin with OHA's argument that the cases are moot. "A case becomes moot when a court's decision will no longer have a practical effect on the rights of the parties." *State v. B. Y.*, 371 Or 364, 370, 537 P3d 517 (2023) (internal quotation marks omitted). ORS 14.175, however, authorizes us to decide a moot challenge to an act of a public body or official if "(1) The party had standing to commence the action; (2) The act challenged by the party is capable of repetition, or the policy or practice challenged by the party continues in effect; and (3) The challenged policy or practice, or similar acts, are likely to evade judicial review in the future." When the ORS

14.175 elements are met, it is within our discretion to resolve an otherwise moot case. *Harisay v. Atkins*, 295 Or App 493, 496, 434 P3d 442 (2018), *aff'd*, 367 Or 116, 474 P3d 378 (2020) ("[E]ven where all elements of ORS 14.175 are met, it is a matter of our discretion whether to review a moot issue.").

Here, the cases are moot for two distinct reasons. First, because petitioners have given birth, no longer require maternity services for those pregnancies, and have suffered no financial consequences as a result of the denials, petitioners' challenges are moot because resolution of them will have no practical effect on their rights. *See Blevins v. Oregon Health Authority*, 291 Or App 669, 675, 422 P3d 407 (2018) (case of OHP member seeking OHP prior authorization for FBC services was moot because the petitioner "has already given birth, and, therefore, her need for OHP coverage for that particular birth has been resolved" (internal quotation marks omitted)). Second, the particular rules that petitioners challenge have been superseded. That, too, renders this proceeding moot. *Mooney v. Oregon Health Authority*, 314 Or App 809, 811, 500 P3d 79 (2021) (because the guidance at issue "has been superseded on multiple occasions by subsequent guidance and * * * administrative rules" the "rule-review proceeding is moot").

The question, then, is whether the ORS 14.175 requirements are satisfied. We conclude that they are with respect to petitioners' substantive challenges to the rules.[5] As to the first requirement, OHA does not dispute that petitioners had standing to challenge the denials of prior authorization for their requested services, and we have no reason to conclude that they did not. As to the second and third requirements, we previously have concluded that a dispute much like this one was capable of repetition yet evading review because of the ephemeral nature of pregnancy. *See Blevins*, 291 Or App at 676-77 (in case challenging predecessors of the rules in this case, court determined that because a prior cesarean section is "an automatic high-risk exclusion" to OOHB services, it was "sufficiently likely" that the agency would deny authorization for any future request

---

[5] Petitioners contend that OHA failed to follow proper rulemaking procedures. That particular contention is not one that is unlikely to evade review in the event that it is repeated, so we do not address it further.

by the petitioner, and thus the petitioner's challenge to the agency's denial of authorization for those services was capable of repetition yet evading review, despite her having already given birth by the time of the decision). OHA's arguments to the contrary do not convince us that a different approach is warranted here.

First, distinguishing *Blevins*, OHA argues that the challenged act is not capable of repetition, and the policy or practice does not continue in effect because the challenged rules were temporary and have since been amended. But although the specific rules have been amended and superseded, the current rules maintain the same or comparable restrictions on authorization and payment for FBC services that existed under the prior rules. Under current OAR 410-130-0240, the tables that list conditions which exclude OHP members from the "low risk" category and therefore eligibility for FBC services, are effectively identical to the tables applied to petitioners under the temporary rules. Further, although the deadline under OAR 410-130-0200 to submit documentation with a prior authorization request has changed from 34 weeks gestation in the temporary rules to 38 weeks gestation in the current rules, petitioners challenge OHA's authority to impose a deadline at all, along with the documentation requirements, and those have not changed. For those reasons, we conclude that the challenged policy or practice continues in effect, notwithstanding the changes to the rules.

OHA alternatively argues that the issue is not likely to evade review because petitioners can challenge the rules in an ORS 183.400 action or the provider itself could bring its own challenges to the denials of authorization for services. But, as we explain below, the resolution of at least some of petitioners' challenges requires the development of an evidentiary record, making them outside the scope of ORS 183.400. *Free Oregon, Inc. v. Oregon Health Authority*, 329 Or App 460, 465, 541 P3d 897 (2023) ("[I]f the resolution of a particular constitutional or statutory challenge to a rule would require the development of a factual record, the challenge cannot be resolved in a proceeding under ORS 183.400.").

Nor does the possibility of a challenge from a provider demonstrate that the issues here are unlikely to evade

review. A provider's interests differ from those of a plan member, and we previously have rejected the notion that the potential for a rule challenge by a different type of party with different interests demonstrates that an issue is one unlikely to evade review. *See Sarepta Therapeutics v. Oregon Health Authority*, 325 Or App 480, 484, 530 P3d 103, *rev den*, 371 Or 333 (2023) (in drug manufacturer's facial challenge to OHA rule, the possibility that individual patients denied coverage for drug might challenge OHA's prior authorization authority in contested case proceedings did not mean manufacturer's challenge to OHA rule was unlikely to evade review, because patients had significantly different interest than manufacturer and "likely to evade review" requirement did not require manufacturer to forego facial challenge in hopes patients would assert similar issues in contested cases). Therefore, petitioners' challenges satisfy the requirements for review under ORS 14.175. As we did in *Blevins*, we exercise our discretion to consider petitioners' substantive challenges to the rules.

B.   *Scope of Contested Case Proceeding*

The first question we must address is whether OHA erred in concluding that petitioners' rule challenges were not cognizable in a contested case proceeding. The agency based that determination on its reading of ORS 183.400, so our review is to determine whether "the agency has erroneously interpreted a provision of law." ORS 183.482(8)(a). Without belaboring the point, it did. ORS 183.400 does not govern the scope of contested case proceedings. With respect to the scope question, we have long held that "contested case hearings are appropriate proceedings in which to raise even purely legal challenges to broad-based rules[.]" *Wheaton v. Kulongoski*, 209 Or App 355, 363 n 3, 147 P3d 1163 (2006). In fact, when a petitioner has the ability to raise a rule challenge in a contested case, any challenge to the rule must be asserted in the contested case rather than through a direct petition to the Court of Appeals. *Id.* (citing *Minor v. AFSD*, 105 Or App 178, 181-82, 804 P2d 1170 (1991)). That requirement flows from the doctrine of administrative remedies which provides that "[i]n general, where, as here, an agency provides a process for raising issues to it, the doctrine

requires a party to present the issue to the agency through that process before a court will consider it." *Golden Rule Farms v. Water Resources Dept.*, 321 Or App 43, 48, 515 P3d 908 (2022). Thus, OHA erred in concluding that petitioners' challenges to the administrative rules were outside the scope of a contested case. OHA should have addressed them in petitioners' contested cases and, to the extent petitioners' challenges required the development of a factual record, the ALJ should have permitted petitioners to develop a record.

That error requires a remand. Some of petitioners' challenges rest on the premises that the rules, either as applied to petitioners or in their operation generally, are so burdensome as to deprive petitioners of services to which they are entitled under federal law. Those challenges cannot be resolved without the development of a factual record that would permit an assessment of the burden of the rules as applied to petitioners or persons similarly situated. Petitioners argue that we need not remand and that, even though the ALJ refused to consider their arguments on that point, we should review the evidence that they proffered but the ALJ excluded and make a determination about whether the restrictions are reasonable on that basis. But we are not a factfinding court, and the responsibility to develop the record and weigh the evidence belongs to the ALJ and then agency in the first instance.

C.  *Facial Challenges to "Low Risk" Definition and Prior Authorization Requirement*

Ordinarily, our conclusion that the agency erred in rejecting petitioners' challenges to the rules for procedural reasons would mean that we would simply remand to the agency to consider those challenges in the first instance, so that the agency could engage meaningfully with the question whether the rules comport with state and federal statutes. One of the primary purposes of requiring a litigant to exhaust administrative remedies is so that the agency may potentially correct course in a way that obviates the need for judicial review.

Nevertheless, petitioners raise two challenges that (we understand) to assert that the rules are invalid on their

face. First, they argue that OHA did not have the authority to establish a different standard of what constitutes a "low risk" birth for OHP members than that contained in the licensing regulations for FBCs, and that OHA was required by federal law to provide them on the same terms that those services would be accessible to non-OHP members. Second, petitioners argue that OHA was not authorized to implement its prior authorization process for FBC services for pregnant OHP members because, in petitioners' view, if a provider determines that a patient is eligible for the services under the licensing regulations, they are by definition medically necessary, and OHA did not have authority to impose further restrictions on eligibility for services. Because those challenges do not require the development of a record, and because the parties have briefed them, we resolve them in the interest of judicial efficiency.

1.  *"Low risk" criteria*

Petitioners assert that the plain text of the Medicaid statute requires OHA to pay for all services performed by an FBC provider to a qualified Medicaid recipient as long as the services were within the provider's "scope of practice" as determined under state law. OHA disagrees and argues that the provision does not impose such requirement and that the agency has discretion to impose reasonable limitations on what services it pays for. Petitioners' assertion presents a question of statutory interpretation: Does 42 USC section 1396d(l)(3) require that OHA fund the cost of all services provided in FBCs that are permissible by law, as determined by the state licensing regulations?

Federal rules of statutory construction govern the interpretation of federal statutes. *Friends of Columbia Gorge v. Columbia River (S055722)*, 346 Or 366, 377-78, 213 P3d 1164 (2009). In interpreting a statute, the federal courts may examine the statute's text, its structure, and its legislative history. *Etter v. Dept. of Rev.*, 360 Or 46, 52, 377 P3d 561 (2016); *see, e.g.*, *Dept. of Revenue of Or. v. ACF Industries*, 510 US 332, 339-46, 114 S Ct 843, 127 L Ed 2d 165 (1994) (examining text, structure, and legislative history of federal statute). We begin "'where we always do: with the text of the statute.'" *Bartenwerfer v. Buckley*, 598 US 69, 73, 143 S Ct

665, 214 L Ed 2d 434 (2023) (quoting *Van Buren v. United States*, 593 US 374, 381, 141 S Ct 1648, 210 L Ed 2d 26 (2021)).

As already discussed, federal law requires states that license FBCs to provide coverage of those services to qualified pregnant Medicaid recipients. 42 USC § 1396a(a)(10)(A)(i)(III); 42 USC § 1396d(a)(28). More specifically, the state must provide "medical assistance," meaning "payment of part or all of the cost of the following care and services or the care and services themselves," to qualified pregnant Medicaid recipients who are unable to meet the cost of "freestanding birth center services (as defined in subsection (l)(3)(A)) and other ambulatory services that are offered by a freestanding birth center (as defined in subsection (l)(3)(B)) and that are otherwise included in the plan." 42 USC § 1396d(a)(28). In full, 42 USC section 1396d(l)(3) provides:

> "(3)(A)   The term 'freestanding birth center services' means services furnished to an individual at a freestanding birth center (as defined in subparagraph (B)) at such center.
>
> "(B)   The term 'freestanding birth center' means a health facility—
>
> "(i)   that is not a hospital;
>
> "(ii)   where childbirth is planned to occur away from the pregnant woman's residence;
>
> "(iii)   that is licensed or otherwise approved by the State to provide prenatal labor and delivery or postpartum care and other ambulatory services that are included in the plan; and
>
> "(iv)   *that complies with such other requirements relating to the health and safety of individuals furnished services by the facility as the State shall establish.*
>
> "(C)   A State shall provide separate payments to providers administering prenatal labor and delivery or postpartum care in a freestanding birth center (as defined in subparagraph (B)), such as nurse midwives and other providers of services such as birth attendants recognized under State law, as determined appropriate by the

Secretary. For purposes of the preceding sentence, *the term 'birth attendant' means an individual who is recognized or registered by the State involved to provide health care at childbirth and who provides such care within the scope of practice under which the individual is legally authorized to perform such care under State law (or the State regulatory mechanism provided by State law)*, regardless of whether the individual is under the supervision of, or associated with, a physician or other health care provider. Nothing in this subparagraph shall be construed as changing State law requirements applicable to a birth attendant."

(Emphases added.)

Petitioners argue that because Oregon licenses FBCs, nurse midwives, and "birth attendants" in the form of Licensed Direct Entry Midwives, and the licensing rules provide a scope of practice within which the providers may perform care, the text of 42 USC section 1396d(l)(3)(B) requires OHA to pay for any services provided in an FBC that were within the scope of its license and in accordance with the "requirements relating to the health and safety of individuals furnished services by the facility as the State shall establish." Additionally, petitioners argue that 42 USC section 1396d(l)(3)(C) requires OHA to pay for any services provided by practitioners at the FBC that were "within the scope of practice under which the individual is legally authorized to perform such care under State law." Petitioners interpret those provisions to mean that if an FBC and regulated providers perform services within the practice limitations imposed by the state—as established by the Oregon licensing restrictions—to an OHP member, OHA must pay for those services, and OHA may not place restrictions on payment in excess of the scope of practice restrictions imposed by the licensing regulations.

We agree with the underlying premise of petitioners' argument that the purpose of Medicaid is to "enable each State, as far as practicable, to furnish medical assistance to individuals whose income and resources are insufficient to meet the costs of necessary medical services," *Beal*, 432 US at 444, and that the state cannot arbitrarily refuse to fund mandatory services. But, as highlighted by OHA, federal Medicaid law directs that a "[s]tate plan for medical

assistance must * * * include reasonable standards * * * for determining eligibility for and the extent of medical assistance under the plan." 42 USC § 1396a(a)(17). The state Medicaid agency "may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures." 42 CFR § 440.230(d). Generally, those statutes "confer[] broad discretion on the States to adopt standards for determining the extent of medical assistance, requiring only that such standards be 'reasonable' and 'consistent with the objectives' of the Act." *Beal*, 432 US at 444. OHA relies upon that "broad discretion" to argue that it has the authority to refuse to pay for FBC services under certain circumstances, such as those at issue here.

Despite its broad discretion, however, OHA does not have *carte blanche* to refuse to provide mandatory services for any reason whatsoever. *See Weaver v. Reagen*, 886 F2d 194, 197 (8th Cir 1989) ("Although a state has considerable discretion in fashioning its Medicaid program, the discretion of the state is not unbridled[.]"). Those provisions have been interpreted to require that a state Medicaid plan provide "medically necessary" treatment to comport with the objectives of the Medicaid Act. *See Beal*, 432 US at 444-45 ("[S]erious statutory questions might be presented if a state Medicaid plan excluded necessary medical treatment from its coverage[.]"). To restrict payment for a required service, the restriction must be reasonable, based on "medical necessity" or "utilization control procedures," and be consistent with the objectives of the Medicaid Act. 42 CFR § 440.230(d); 42 USC § 1396a(a)(17). Further, to comply with Medicaid's mandatory provisions to fund certain services, the services must be "sufficient in amount, duration, and scope to reasonably achieve its purpose," and the state cannot "arbitrarily deny or reduce the amount, duration, or scope of a required service * * * solely because of the diagnosis, type of illness, or condition." 42 CFR § 440.230(b), (c).

Considering the above principles, we are unable to conclude that OHA's rule is facially invalid on the grounds argued by petitioners. Although it is unclear why OHA determined that "low risk" for purposes of OHP should mean something different, and more restrictive, than "low risk" for

purposes of FBC licensing, contrary to petitioners' assertion, OHA is not unequivocally prohibited from restricting funding for certain services for certain individuals beyond whether they are legally authorized under state law, even if within a mandatory category. *See Beal*, 432 US at 443-45 (determining that Medicaid Act does not require state to "fund under its Medicaid program the cost of all abortions that are permissible under state law," that "nothing in the statute suggests that participating States are required to fund every medical procedure that falls within the delineated categories of medical care," and that "it is hardly inconsistent with the objectives of the Act for a State to refuse to fund unnecessary though perhaps desirable medical services").

That is not to say that the challenged rule is necessarily valid under all circumstances, nor that the services petitioners requested prior authorization for were not medically necessary. To the extent petitioners claim that the rule, as OHA has applied it in their cases, is inconsistent with the identified provisions of federal law, resolution of those contentions cannot be accomplished without the development of the factual record on remand.

Petitioners further argue that the rules determining "low risk" status for OHP members are facially invalid because, in petitioners' view, federal law requires OHA to ensure that OHP members have access to services on the same terms as non-OHP members. Because the authority provided by petitioners does not support their position, petitioners have not demonstrated that OHA's rules are invalid for the reason claimed.[6]

Petitioners argue that section 1903(m)(1)(A)(i) of the Social Security Act requires OHA to ensure that OHP members have the same access to services as non-OHP members in the state, but they misread that provision in two important ways. Section 1903(m)(1)(A)(i), relating to payment to states for Medicaid programs, provides that:

"(m)(1)(A)  The term 'medicaid managed care organization' means a health maintenance organization, an eligible organization with a contract under section 1876 \*\*\*,

---

[6] Whether other authorities would support petitioners' position is not a question that is before us.

a provider sponsored organization, or any other public or private organization, which meets the requirement of section 1902(w) and—

"(i)   makes services it provides to individuals eligible for benefits under this title accessible to such individuals, within the area served by the organization, to the same extent as such services are made accessible to individuals *(eligible for medical assistance under the State plan)* not enrolled with the organization \* \* \*."

(Emphasis added.) Contrary to petitioners' assertions, that section does not require OHA to ensure that OHP members have access to the same services as non-OHP members. Rather, by its terms, it requires "managed care organizations" (MCOs), which are contracted organizations throughout the state that provide care management to defined geographic areas, to ensure that their OHP members have access to the same services as OHP members not enrolled in their program, such as OHP members enrolled in a different MCO in the area. *See* OAR 410-141-3500(56) ("'Managed Care Organization (MCO)' is a specific term that means an MCE defined in 42 CFR Part 438."); OAR 410-141-3500(55) ("'Managed Care Entity (MCE)' is a general term that means an entity that enters into one or more contracts with [OHA] to provide services in a managed care delivery system, including but not limited to the following types of entities defined in and subject to 42 CFR Part 438: managed care organizations (MCOs), primary care case managers (PCCMs), prepaid ambulatory health plans (PAHPs), and prepaid inpatient health plans (PIHPs)."); 42 CFR § 438.2 ("Managed care organization (MCO) means an entity that has, or is seeking to qualify for, a comprehensive risk contract under this part, and that is \* \* \* Any public or private entity that meets the advance directives requirements and is determined by the Secretary to also meet the following conditions: (i) Makes the services it provides to its Medicaid enrollees as accessible (in terms of timeliness, amount, duration, and scope) as those services are to *other Medicaid beneficiaries within the area served by the entity*." (Emphasis added.)); *see also G. v. Hawaii*, 794 F Supp 2d 1119, 1150 (D Haw 2011), *as amended* (Jan 21, 2011) ("The legislative history indicates that the purpose of 42 U.S.C. § 1396b

(m)(1)(A)(i) 'is to permit States to enter prepaid arrange-
ment with [non-federally qualified HMOs] provided that
such entity: (a) make covered services to Medicaid enrollees
accessible on the same basis as *other Medicaid eligibles in
the area* \*\*\*.' Omnibus Budget Reconciliation Act of 1981,
S.Rep. No. 97-139, at 968 (1981), U.S. Code Cong. & Admin.
News 1981, p. 396 (Conf. Rep.)." (Brackets and emphasis
in *G.*)); Centers for Medicare & Medicaid Services, Letter
to State Health Officials, SHO # 16-006, 4 (Apr 26, 2016)
("[S]ection 1903(m)(1)(A)(i) of the Act requires a managed
care organization to make the services it provides, within
the area served by the managed care organization, accessi-
ble to the same extent as such services are made accessible
under the Medicaid state plan to beneficiaries who are not
enrolled in the managed care plan.").

Simply put, section 1903(m)(1)(A)(i) of the Social
Security Act, does not stand for the proposition that peti-
tioners claim it does and, for that reason, does not offer a
basis for concluding that the rules are facially invalid.

### 2. *Prior authorization process*

Petitioners' second facial challenge, as we under-
stand it, is that the rule requiring prior authorization for
FBC services is facially invalid and exceeds OHA's author-
ity based on their assertion that OHA is required to cover
the services under all circumstances because they are man-
datory for the categorically needy, and that medical neces-
sity is already determined by the provider when deciding
whether a patient is eligible for the services under the
licensing restrictions. However, as already explained, fed-
eral law does not prohibit OHA from placing restrictions on
what services it offers based upon medical necessity and uti-
lization controls. OHA must determine whether the services
are medically necessary and, therefore, reimbursable, and
it does so through a prior authorization process. Whether
the process requirements themselves, such as the type and
amount of required documentation, are reasonable or lead
to the services being insufficient in amount, duration, or
scope, is a question that requires development of a factual
record. Accordingly, it is not appropriate for us to consider

in this appeal, and the parties may address that issue upon remand.

## III.  CONCLUSION

For the reasons stated above, we decline to dismiss this case as moot. In rejecting petitioners' rule challenges, the agency erroneously interpreted ORS 183.400. Because a correct interpretation requires that petitioners be given an opportunity to develop the record in support of their as-applied and fact-based challenges, we must remand for further proceedings consistent with this decision. ORS 183.482(8)(a). We reject petitioners' facial challenges because the authority they cited does not demonstrate that the challenged rules conflict with federal law on their face.

Reversed and remanded.